PIERSON SAND AND GRAVEL, INC v KEELER BRASS COMPANY

Docket Nos. 108729, 108730. Argued January 20, 1999 (Calendar No. 3).
    Decided July 8, 1999.

In 1989, Pierson Sand and Gravel, Inc., brought an action in the
United States District Court for the Western District of Michigan
against Pierson Township, asserting claims under the federal Com-
prehensive Environmental Response Compensation and Liability
Act and the Michigan Environmental Protection Act, and for com-
mon-law trespass. Keeler Brass Company was later added as a
defendant in the federal action, as were several chemical manufac-
turers. The plaintiffs sought recovery costs for the environmental
cleanup of the Central Sanitary Landfill in Macomb County, which
they owned. They eventually abandoned their state law claims.
When the plaintiffs filed their initial complaint in 1989, the Michi-
gan Environmental Response Act did not recognize a private cause
of action, but at the time the plaintiffs filed a third amended com-
plaint, in 1992, MERA recognition of a private cause of action had
taken effect. After the trial court granted summary judgment for
the defendants and the United States Court of Appeals for the Sixth
Circuit affirmed, the plaintiff brought an action in the Ingham Cir-
cuit Court against Keeler Brass and others. The claims and theories
arose out of the same alleged transactions and occurrences that led
to the federal litigation. The court, Thomas L. Brown, J., denied the
defendants' motion for summary disposition, holding that res judi-
cata was not a bar to the action. The Court of Appeals, WAHLS, P.J.,
and YOUNG and J. H. FISHER, JJ., affirmed in an unpublished opinion
per curiam (Docket No. 185124). The defendants appeal.

In an opinion by Chief Justice WEAVER, joined by Justices
BRICKLEY, KELLY, and CORRIGAN, the Supreme Court held:

Res judicata does not bar the plaintiff's claim. Where the district
court dismissed all plaintiff's federal claims in advance of trial, and
there are no exceptional circumstances that would give the federal
court grounds to retain supplemental jurisdiction over the state
claim, it is clear that the federal court would not have exercised its
supplemental jurisdiction over the remaining state law claims.

1. As a general rule, res judicata will apply to bar relitigation
based upon the same transaction or events, regardless of whether

the subsequent litigation is pursued in a federal or state forum. Unless it is clear that a federal court would have declined to exercise jurisdiction, the state action is barred. The doctrine of res judicata was judicially created; it is not a constitutional mandate that must be carefully construed to maintain its integrity. In Michigan, the doctrine has been applied not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point that properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time. Thus, in this case, the plaintiffs' state claims, which could have been brought with the federal claims by supplemental jurisdiction, clearly would have been banned by res judicata if the federal court had entered a judgment on the federal claim. However, if the plaintiffs had brought the state claims in the federal court, and the federal court had refused to retain jurisdiction over them when it dismissed the federal counts, the plaintiffs would not be barred by res judicata from bringing their state claims in state court.

2. Although res judicata is grounded in efficiency, finality, and fairness, application of the doctrine under circumstances involving a federal court's supplemental (pendent) jurisdiction must also take into account the constitutional foundations of that jurisdiction. Supplemental jurisdiction raises concerns regarding comity because the doctrine is grounded in the judicial economy, convenience, and fairness to litigants of the federal court's consideration of both federal and state claims that comprise but one case. If not for the federal question involved, the state law claims would not fall within the federal court's jurisdiction. In this case, considering comity as well as general fairness, judicial efficiency should not prevail. There are no factors in the instant case that would compel the federal court to retain jurisdiction over the state claims.

Justice CAVANAGH concurred in the result only.

Affirmed.

Justice TAYLOR, dissenting, stated that if a plaintiff wants to preserve state law claims in a federal court, the plaintiff should be obligated to plead them, or at least attempt to plead them in the federal court. If the federal court later declines to exercise supplemental jurisdiction over state law claims, then and only then would filing the claims in a state court not be barred by res judicata.

The majority adopts an exception to res judicata found in the Second Restatement of Judgments that a second action is not precluded by operation of the doctrine of res judicata where the court, having jurisdiction of the first action, clearly would have declined to exercise jurisdiction over the second as a matter of discretion.

This exception is inconsistent with Michigan's broad approach to res judicata, and depends on the suspect proposition that one can surmise whether a federal court "clearly" would have done something when it had discretion to do it. The exception also inappropriately allows a plaintiff's voluntary choice not to include state law claims in a federal complaint to subvert the strong policy grounds underlying the doctrine of res judicata. There is no question that adopting this exception does not conserve judicial resources and that it subjects defendants to the vexation and costs associated with multiple lawsuits.

Even if adopted, the exception would be inapplicable in this case because it cannot be concluded that the federal court "clearly" would have dismissed the plaintiffs' state law counts upon dismissal of the federal jurisdiction granting count. The majority's holding unfairly deprives the instant defendants, and undoubtedly future defendants, of the certainty and closure promoted by res judicata.

Justice YOUNG took no part in the decision of this case.

*Fausone, Taylor & Bohn, L.L.P.* (by *Thomas J. Fayfer* and *Paul F. Bohn*), and *Deborah L. Bruce*, for plaintiffs-appellees.

*Varnum, Riddering, Schmidt & Howlett, L.L.P.* (by *Michael F. Kelly*), for defendant-appellant Keeler Brass Company.

*Butzel, Long* (by *Alan S. Levine*); *Thorp, Reed & Armstrong*, of counsel (by *David G. Ries* and *Joseph R. Brendel*), for defendant-appellant Chemetron Investments, Inc.

*Mika, Meyers, Beckett & Jones, P.L.C.* (by *Douglas A. Donnell*), for defendant-appellant Pierson Township.

WEAVER, C.J. We are called on to determine whether plaintiffs' instant lawsuit is barred by res judicata as a result of defendants having prevailed in a prior federal lawsuit. We hold that, where the district court dismissed all plaintiff's federal claims in advance of

trial, and there are no exceptional circumstances that would give the federal court grounds to retain supplemental jurisdiction over the state claim, then it is clear that the federal court would not have exercised its supplemental jurisdiction over the remaining state law claims. For the reasons stated below, we find res judicata does not bar plaintiffs' instant action, and therefore, affirm the decision of the Court of Appeals.

I

Plaintiff Pierson Sand and Gravel, Inc., commenced an action in the United States District Court for the Western District of Michigan against Pierson Township on August 3, 1989, asserting claims under §§ 107(a) and 113(f) of the federal CERCLA[1] statute, as well as under the Michigan Environmental Protection Act (MEPA),[2] and for common-law trespass.[3] Defendant Keeler Brass Company was added as a defendant in the federal action in a second amended complaint, but later dismissed without prejudice, and then again added in a third amended complaint.

Plaintiffs' third amended complaint, filed on October 15, 1992, stated claims against the township, Keeler, and defendant Chemetron Investments, Inc., as well as several other chemical manufacturers. The action sought recovery costs for the environmental cleanup of the Central Sanitary Landfill in Macomb

---

[1] The Comprehensive Environmental Response, Compensation, and Liability Act, specifically, 42 USC 9607(a) and 42 USC 9613(f).

[2] MCL 691.1201 et seq.; MSA 14.528(201) et seq.

[3] Pierson Sand and Gravel, Inc., was the only plaintiff in the federal action, but it is undisputed that the plaintiffs in this case, Pierson Sand and Gravel, Inc., and Central Sanitary Landfill, Inc., are identical to the plaintiff in the federal action.

County owned by the plaintiffs. By the time plaintiffs filed the third amended complaint, they were asserting only CERCLA claims, and had abandoned their prior state law claims.

Also in existence at this time was the Michigan Environmental Response Act (MERA),[4] which forms the basis of the instant action. In 1989, when plaintiffs filed their initial complaint, the MERA did not recognize a private cause of action. Subsequently, the Legislature amended the MERA to recognize a private cause of action, and, at the time plaintiffs filed their third amended complaint, in October 1992, MERA recognition of a private cause of action had recently taken effect. Plaintiff did not, however, include a claim under the MERA in any of its federal complaints.

Following extensive procedural maneuvers, including the addition of many third-party defendants, the parties undertook discovery in the federal case and completed mediation. Cross motions for summary disposition were submitted to the court shortly before the scheduled start of trial. The district court issued an opinion and judgment granting summary judgment for defendants, ruling that the plaintiff was not entitled to recover response costs pursuant to the CERCLA on the basis of a finding that plaintiff could not prevail as a matter of law in an essential element of its claim, in that the plaintiff had not complied with the

---

[4] Then MCL 299.601 *et seq.*; MSA 13.32(1) *et seq.* The instant action arose under the MERA as amended in 1990. Subsequently, 1994 PA 451 codified the MERA as part 201 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.20101 *et seq.*; MSA 13A.20101 *et seq.*, effective March 30, 1995. Subsequently, the Legislature further amended the NREPA in 1995 and 1996. The version of the MERA as it existed after the 1990 amendments is controlling in the case before us.

statutorily required National Contingency Plan (NCP), a necessary prerequisite to a CERCLA action.[5]

Plaintiff appealed to the United States Court of Appeals for the Sixth Circuit, which affirmed in .an opinion not designated for publication.[6] Shortly thereafter, plaintiff instituted the instant action, seeking relief under the MERA, as well as various common-law claims for negligence, negligence per se, private nuisance, public nuisance, common-law indemnity, and common-law contribution.

The parties do not dispute that the claims and theories in the instant case arise out of the same alleged transactions and occurrences that led to the prior federal litigation. The defendants are alleged to be liable because of contamination of landfill sites during a time when hazardous substances were alleged to have been disposed there. The claims against defendants Keeler and Chemetron are based on their alleged liability for disposal, or alleged arrangement for transfer of hazardous substances, while the township's liability is based on operating the landfill. The relief sought by the plaintiff, recovery of claimed response costs for remediation of the soil and groundwater, is the same relief sought in the federal action.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7), asserting res judicata as a bar to the instant action. Citing *Sherwin-Williams Co*

---

[5] The National Contingency Plan is described at 42 USC § 9605 and is set forth at 40 CFR Part 300, *et seq.* That plan sets forth "procedures and standards for responding to releases of hazardous substances, pollutants, and contaminants . . . ." 42 USC § 9605. [*United States v R W Meyer, Inc*, 889 F2d 1497, 1500, n 8 (CA 6, 1989).]

[6] *Pierson Sand & Gravel, Inc v Pierson Twp*, 89 F3d 835 (CA 6, 1996) (table).

*v City of Hamtramck*, 840 F Supp 470 (ED Mich, 1993), the Ingham Circuit Court denied defendants' motion. Defendants appealed as of right in the Court of Appeals, which affirmed, citing 1 Restatement Judgments, 2d, § 25, comment e, illustration 10, pp 213-214.[7]

Defendants separately applied for leave to appeal to this Court, and this Court granted those applications and consolidated them to consider whether res judicata should operate to bar plaintiffs' instant action. We conclude that a proper application of established principles of res judicata will not lead to a finding of such a bar.

II

Defendants-appellants present us with the single question, whether the Court of Appeals erred in determining that res judicata would not bar the plaintiffs' instant state action.[8] The Court of Appeals analyzed this issue as follows:

> Defendants next argue that the doctrine of res judicata bars plaintiffs' present lawsuit. We disagree. The federal district court that decided plaintiffs' prior suit could have exercised pendent jurisdiction over plaintiffs' state law claims,

---

[7] Unpublished opinion per curiam, issued February 7, 1997 (Docket No. 185124).

[8] In the Court of Appeals, defendants also claimed error in the trial court's application of federal law, as opposed to Michigan law, in determining whether plaintiffs' state cause of action was barred by res judicata. The Court of Appeals held that federal law governs the res judicata effect of federal judgments, including those in diversity cases, in subsequent suits. Restatement Judgments, 2d, § 87, p 314; *Travelers Indemnity Co v Sarkisian*, 794 F2d 754, 761, n 8 (CA 2, 1986); *Silcox v United Trucking Service, Inc*, 687 F2d 848, 852 (CA 6, 1982). Defendants no longer claim error in this conclusion.

had the claims been raised before it. However, where the district court dismissed all plaintiffs' federal claims in advance of trial, it is clear that the federal court would not have exercised its pendent jurisdiction over the remaining state law claims. See *Sherwin-Williams Co v Hamtramck*, 840 F Supp 470, 479 (ED Mich, 1993); see also *Bell v Fox*, 206 Mich App 522; 522 NW2d 869 (1994). Res judicata therefore does not bar plaintiffs' subsequent state suit. Restatement Judgments, 2d, § 25, comment e, illustration 10, pp 213-214, see *Anderson v Phoenix Investment Counsel of Boston, Inc*, 387 Mass 444, 449-452; 440 NE2d 1164 (1982).

The determination whether res judicata will bar a subsequent suit is a question of law that we review de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

The Court of Appeals relied on 1 Restatement Judgments, 2d, § 25, comment e, illustration 10, pp 213-214.[9]

A commences an action against B in a federal court for treble damages under the federal antitrust laws. After trial, judgment is entered for the defendant. A then seeks to commence an action for damages against B in a state court under the state antitrust law grounded upon substantially the same business dealings as had been alleged in the federal action. Even if diversity of citizenship between the parties did not exist, the federal court would have had "pendent" jurisdiction to entertain the state theory. Therefore unless it is clear that the federal court would have declined as a matter of discretion to exercise that jurisdiction (for

---

[9] We note that we have often examined the Restatement of Judgments, 2d, in construing whether subsequent claims would be precluded. See, e.g., *Quinton v General Motors Corp*, 453 Mich 63, 99; 551 NW2d 677 (1996) (BOYLE, J., concurring); *Kosiel v Arrow Liquors Corp*, 446 Mich 374, 379; 521 NW2d 531 (1994); *Amalgamated Transit Union, Local 1564, AFL-CIO v Southeastern Michigan Transportation Authority*, 437 Mich 441; 473 NW2d 249 (1991).

example, because the federal claim, though substantial, was dismissed in advance of trial), the state action is barred.

III

"The doctrine of res judicata was judicially created in order to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *Hackley v Hackley*, 426 Mich 582, 584; 395 NW2d 906 (1986), quoting *Allen v McCurry*, 449 US 90, 94; 101 S Ct 411; 66 L Ed 2d 308 (1988). Both Michigan and the federal system have adopted a broad approach to the application of res judicata. *Hackley; Rivet v Regions Bank of Louisiana*, 522 US 470, 474-476; 118 S Ct 921; 139 L Ed 2d 912 (1998). As we have stated:

> In Michigan, the doctrine of res judicata applies, except in special cases, in a subsequent action between the same parties and " 'not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.'" [*Hackley* at 585 (citations omitted).]

As a general rule, res judicata will apply to bar a subsequent relitigation based upon the same transaction or events, regardless of whether a subsequent litigation is pursued in a federal or state forum. The rule, as applied by the federal courts, has been stated as:

> If a plaintiff has litigated a claim in federal court, the federal judgment precludes relitigation of the same claim in state court based on issues that were or could have been

raised in the federal action, including any theories of liability based on state law. The state courts must apply federal claim-preclusion law in determining the preclusive effect of a prior federal judgment. [18 Moore, Federal Practice, § 131.21[3][d], p 131-50.]

We thus turn to the question whether the plaintiffs' claims fall within one of the "special cases" contemplated in *Hackley*, and, in particular, within the boundaries stated in the Restatement comment.

IV

On appeal, defendants first attack the decision of the Court of Appeals as being one that ignores the longstanding rules of res judicata. We disagree, however, in that it is clear that the Court of Appeals decision reflects a cognizance of the general scope of res judicata, while relying instead on a narrow exception, that found in the Restatement comment. In view of the favor that we have traditionally shown toward a broad application of res judicata, it would be erroneous to read the Court of Appeals decision in any manner that would indicate a retreat from such a preference.[10] The Court of Appeals did not depart from our consistent holdings in the area of res judicata, but instead focused solely on a narrow exception within those confines.

Turning to the exception of the Restatement comment, defendants then argue that its application should be limited solely to exceptional cases where it

---

[10] Likewise, we caution that it would be an error to read our decision today as a retreat from a broad application of res judicata. We recognize today only the application of an already accepted and quite narrow exception to the application of res judicata as a bar to a subsequent state action following a federal action.

is abundantly clear that the federal court would decline to exercise its jurisdiction over state claims that were not submitted to it. We find that this case is a stellar example of one in which the Restatement comment should apply.

V

The question here is whether plaintiffs' state claims, which were not brought with the federal action, are precluded by the doctrine of res judicata. We must remember that this doctrine is not a constitutional mandate that must be carefully construed to maintain its integrity, but only a tool created by the courts.

As we noted above, in Michigan, the doctrine of res judicata has been applied " 'not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment,' " but applies to " 'every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.' " *Hackley, supra* at 585. Thus, plaintiffs' state claims, which could have been brought with the federal claims by supplemental jurisdiction, clearly would have been barred by res judicata if the federal court had entered a judgment on the federal claim. However, if plaintiffs had brought the state claims in the federal court, and the federal court had refused to retain jurisdiction over them when it dismissed the federal counts, then the plaintiffs would not be barred by res judicata from bringing their state claims in state court. *Merry v Coast Community College Dist*, 97 Cal App 3d 214, 228; 158 Cal Rptr 603 (1979).   1 Restatement Judgments, 2d,

§ 25, comment e, p 213    essentially attempts to assure that those claims that could have been brought, but were not, receive the same treatment as if they had been brought.[11] Thus, if the federal court would clearly have dismissed the state claims when it dismissed the federal claims, then the doctrine of res judicata should not apply. The goal of res judicata is to promote fairness, not lighten the loads of the state court by precluding suits whenever possible.

With the recognition of pendent (now supplemental) jurisdiction of the federal courts over state claims, there also arose a reluctance of the federal courts to address solely state matters on those occasions when the court was able to dispose of all federal claims before trial. *United Mine Workers of America v Gibbs*, 383 US 715; 86 S Ct 1130; 16 L Ed 2d 218 (1966).

> Pendent jurisdiction [over a state claim] exists whenever there is a [federal] claim . . . and the relationship between that claim and the state claim permits the conclusion that the entire action . . . comprises but one . . . "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact . . . such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding . . . . [Pendent jurisdiction] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . Certainly, if the federal claims are dismissed before trial . . . the state claims should be

---

[11] As the Minnesota Supreme Court said, "it would be unfair to impose a harsher result for unappended state law claims than would have occurred had the claims been raised." *Beutz v A O Smith Harvestore Products, Inc*, 431 NW2d 528, 532 (Minn, 1988).

dismissed as well . . . without prejudice and left for reso-
lution to state tribunals. [*Id.* at 725-727 (citations omitted).]

Indeed, this reluctance has grown to become accepted and practiced by the vast majority of federal circuits. See, e.g., *Purgess v Sharrock*, 33 F3d 134 (CA 2, 1994); *Tully v Mott Supermarkets, Inc*, 540 F2d 187 (CA 3, 1976); *Hankins v The Gap, Inc*, 84 F3d 797 (CA 6, 1996).[12] Accordingly, we can confidently surmise that, as a general rule, where, as in the instant case, all federal claims are resolved before trial, federal courts will decline to exercise supplemental jurisdiction over remaining state law claims, preferring to dismiss them without prejudice for resolution in the state courts.[13]

We hold that, when the federal claims are dismissed before trial, the federal court clearly would have dismissed the state claims if there are no exceptional circumstances that would give the federal courts cause to retain supplemental jurisdiction.

This approach closely tracks the federal rule that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state claims." *Carnegie-Mellon Univ v Cohill*, 484 US 343, 350; 108 S Ct 614;

---

[12] At least one federal circuit has held that, where the federal claims are dismissed, it is an abuse of discretion on the part of the federal district court to retain jurisdiction over a novel and complex state law claim. *Parker & Parsley Petroleum Co v Dresser Industries*, 972 F2d 580 (CA 5, 1992).

[13] See, e.g., *Baltimore Orioles, Inc v Major League Baseball Players Ass'n*, 805 F2d 663 (CA 7, 1996), and *O'Connor v Nevada*, 27 F3d 357 (CA 9, 1994).

98 L Ed 2d 720 (1988). The example given in 1 Restatement Judgments, 2d, § 25, comment e, illustration 10, p 214, also supports this approach. It provides, in pertinent part:

> Therefore unless it is clear that the federal court would have declined as a matter of discretion to exercise that jurisdiction (*for example, because the federal claim, though substantial, was dismissed in advance of trial*), the state action is banned. [Emphasis added.]

The Restatement lists the situation we have here— where the federal claim was dismissed before trial— as an example of when it is "clear that the federal court would have declined" to retain jurisdiction of the state claim. This approach is also consistent with the manner in which other courts have applied the Restatement. See *Parks v City of Madison*, 171 Wis 2d 730; 492 NW2d 365 (1992); *Sattler v Bailey*, 184 W Va 212; 400 SE2d 220 (1990); *Merry v Coast Community College, supra.*

Further, this approach is supported by the comity implications of supplemental jurisdiction. Although res judicata is grounded in efficiency, finality, and fairness, application of the doctrine under circumstances involving the federal court's supplemental (pendent) jurisdiction must also take into account the constitutional foundation of that jurisdiction. Supplemental jurisdiction raises concerns regarding comity because the doctrine is grounded in the judicial economy, convenience, and fairness to litigants of the federal court's consideration of both federal and state claims that comprise but one "case." *Gibbs, supra* at 725-726. If not for the federal question involved, the state law claims would not fall within the federal

court's jurisdiction. *Id.* Considering comity as well as general fairness, we conclude that judicial efficiency should not prevail under these circumstances.

Exceptional circumstances that would cause the federal court to retain supplemental jurisdiction might include when the defendant fails to call the court's attention to the weakness of the federal claim before the court has invested a substantial amount of time in the case; when the supplemental claim significantly invokes questions of federal policy, *Kavit v A L Stamm & Co*, 491 F2d 1176, 1180 (CA 2, 1974); where the court and the litigants had expended considerable time on the supplemental claims before the federal claim was dismissed, *Meyer v California & Hawaiian Sugar Co*, 662 F2d 637 (CA 9, 1981); and where there have been substantial resources invested in the lawsuit towards the resolution of the dispute, and the parties are ready for trial, *Newport Ltd v Sears, Roebuck & Co*, 941 F2d 302 (CA 5, 1991). There are no factors in the instant case that would compel the federal court to retain jurisdiction over the state claims. While defendants point to the years of pretrial maneuvering that occurred in this case, we note that there is a good deal of accuracy to plaintiffs' position that much of the pretrial maneuvering involved the inclusion of third-party defendants, as opposed to the expenditure of significant resources between the instant parties in preparing to litigate the underlying matter. While federal courts have recognized that, at times, the expenditure of excessive resources by the parties in preparing for trial might be sufficient to sway the courts to exercise jurisdiction over state claims even in the absence of remain-

ing federal claims,[14] there appear to be no such factors in the instant case that would merit such a determination.

While we would not condone, or intend to encourage, the failure of plaintiffs to include an MERA claim in the federal action that precluded the district court from having the opportunity to decline to exercise jurisdiction, we cannot accept defendants' invitation to extend such a failure to preclude errors in state actions on the basis of res judicata. As noted in a similar matter by the Wisconsin Court of Appeals:

> Based on *Gibbs* and the Restatement comments and commentary, federal courts consistently have held that when a federal claim is dismissed on a motion for summary judgment, the exercise of sound discretion requires dismissal of the state claims as well, without prejudice to the plaintiff's right to litigate them in the proper state forum. Most particularly, the Court of Appeals for the Seventh Circuit has stated that . . . "when the federal claims are disposed of before trial, the state claims should be dismissed without prejudice almost as a matter of course." [*Parks, supra* at 737-738.]

We hold that, where the district court dismissed all plaintiff's federal claims in advance of trial, and there are no exceptional circumstances that would give the federal court grounds to retain supplemental jurisdiction over the state claim, then it is clear that the federal court would not have exercised its supplemental jurisdiction over the remaining state law claims.

Accordingly, pursuant to the Restatement comment, res judicata will not act to bar plaintiffs' claim. The decision of the Court of Appeals is affirmed.

---

[14] See *O'Connor v Nevada*, n 13 *supra*.

BRICKLEY, KELLY, and CORRIGAN, JJ., concurred with
WEAVER, C.J.

CAVANAGH, J., concurred in the result only.

TAYLOR, J. (*dissenting*). Plaintiffs filed a lawsuit in
federal court in 1989, seeking recovery of costs for an
environmental cleanup of a landfill it owned. Plain-
tiffs filed a third amended complaint on October 15,
1992. At this time, plaintiffs could have included, but
did not, any state law counts (such as a claim under
the Michigan Environmental Response Act[1]) in their
federal lawsuit. Extensive discovery occurred, and
the case was mediated. On the eve of trial, approxi-
mately one year after the third amended complaint
had been filed, the parties filed cross motions for
summary disposition. The federal district court
granted summary disposition for defendants.[2] The
United States Court of Appeals for the Sixth Circuit
subsequently affirmed this ruling.[3] Soon thereafter,
plaintiffs instituted a state court action that sought
relief under various state law theories including the
MERA.

Defendants moved for summary disposition of the
state lawsuit, citing MCR 2.116(C)(7) (action barred
because of a prior judgment, i.e., res judicata). The
trial court denied the motion, and the Court of
Appeals affirmed.[4] This Court subsequently granted

---

[1] Then found at MCL 299.601 *et seq.*; MSA 13.32(1) *et seq.*

[2] 851 F Supp 850 (WD Mich, 1994).

[3] Unpublished opinion listed in the table of cases at 89 F3d 835 (CA 6,
1996).

[4] Unpublished opinion per curiam, issued February 7, 1997 (Docket No.
185124).

defendants' applications for leave to appeal. 457 Mich 870 (1998).

The majority concludes that plaintiffs' lawsuit is not barred by res judicata. I dissent. As explained below, well established principles of res judicata require dismissal of plaintiffs' state court lawsuit. Further, refusal to so find is inconsistent with Michigan's "broad" approach to res judicata and undermines the very core policies that underlie res judicata principles.

The majority concludes that a proper application of established principles of res judicata does not bar plaintiffs' state lawsuit. It reaches this conclusion notwithstanding that (1) there is no dispute that the plaintiffs' claims and theories in the state lawsuit arise out of the same alleged transactions and occurrences that led to the prior federal litigation, and (2) there is also no question that the relief plaintiffs are seeking in the state lawsuit is the same relief they sought in the federal lawsuit.

As recognized by the majority, Michigan has a broad approach to application of res judicata. *Hackley v Hackley*, 426 Mich 582, 584; 395 NW2d 906 (1986). Indeed, the doctrine was created in order to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* Further, res judicata applies not only to points on which the court actually ruled, but also on every point that the parties, exercising reasonable diligence, might have brought forward in the first lawsuit. *Gursten v Kenney*, 375 Mich 330, 335; 134 NW2d 764 (1965).

The majority adopts an exception to res judicata found in the Second Restatement of Judgments. More specifically, the majority adopts and finds applicable comment e to § 25 of the Restatement, which states that a second action is not precluded by operation of the doctrine of res judicata where the court, having jurisdiction of the first action, would "clearly" have declined to exercise jurisdiction over the second as a matter of discretion. *Id.* at 213.

I

First, I would not adopt this exception from the Restatement of Judgments because it is not consistent with Michigan's following a "broad" approach to res judicata, and it depends on a suspect proposition, i.e., one can surmise whether a federal court "clearly" would have done something when it had discretion to do it or not to do it as the court saw fit.[5]

The caveat in comment e of the Restatement of Judgments has been persuasively criticized. In particular, the interpretation has been found unworkable because: (1) it requires a court to engage in "speculative gymnastics,"[6] (2) calls for "pure speculation,"[7] and (3) requires an exercise in "prognosticative futility."[8] In my judgment, it is inherently impossible to determine whether a federal court "clearly" would

---

[5] *Street v Corrections Corp of America*, 102 F3d 810, 818 (CA 6, 1996) (district courts enjoy "wide discretion" in deciding whether to retain supplemental jurisdiction over a state claim after all federal claims have been dismissed).

[6] *Nwosun v General Mills Restaurants, Inc*, 124 F3d 1255, 1258 (CA 10, 1997).

[7] *Gilles v Ware*, 615 A2d 533, 541 (DC App, 1992).

[8] *Anderson v Phoenix Investment Counsel of Boston, Inc*, 387 Mass 444, 451; 440 NE2d 1164 (1982).

have declined to do something that is a matter within its discretion.

This exception in the Restatement inappropriately allows a plaintiff's voluntary choice not to include state law claims in a federal complaint to subvert the strong policy grounds underlying the doctrine of res judicata.[9] There is no question that adopting this exception from the Restatement does not conserve judicial resources and that it subjects defendants to the vexation and costs associated with multiple lawsuits.

If a plaintiff wants to preserve state law claims, the plaintiff should be obligated to plead them, or at least attempt to plead them, in the federal court. If the federal court does in fact later decline to exercise supplemental jurisdiction over state law claims, then and only then, would filing such state claims in a state court not be barred by res judicata. The reason for this rule is evident. The rule of res judicata is designed to forestall a plaintiff from getting "two bites at the apple." We should not countenance, by adopting the exception from the Restatement, a plaintiff's action in failing to plead a state law theory in a federal court (perhaps with the hope of later litigating the theory in a state court) because it was possible, or even probable, that the federal court would have declined to exercise its supplemental jurisdiction. Rather, such a plaintiff should plead state claims in the federal court, and, if that court fails to hear the

---

[9] See, e.g., *Mohamed v Exxon Corp*, 796 SW2d 751, 756-757 (Tex App, 1990) (holding that when no effort was made to present state claims to a federal court, the state court must presume that federal judgment is res judicata).

claims, the plaintiff would then be allowed to pursue state law claims in a state court.

If a plaintiff does plead or attempt to plead state law claims in federal court and the court later dismissed all federal jurisdiction granting claims, then the federal court will decide whether to decline jurisdiction over the state law claims. Only then will a state court know for certain whether the federal court declined to exercise its supplemental jurisdiction over the state law claims. By even agreeing to participate in the inherent speculation required by the exception to the Restatement, the majority does a disservice to the policy considerations res judicata was designed to protect.

## II

Even if I were persuaded to adopt this exception from the Restatement, I would find it inapplicable here because I cannot conclude that the federal court "clearly" would have dismissed plaintiffs' state law counts upon dismissal of the federal jurisdiction granting count (if plaintiffs had included them in their federal lawsuit).

The majority concludes that the federal judge "clearly" would have declined to exercise supplemental jurisdiction over plaintiffs' MERA claim because of the strong general tendency of the federal courts to decline to exercise jurisdiction over lone state claims and because the MERA had only recently been amended to allow private causes of action.

I do not challenge the fact that the federal courts have a general reluctance to exercise supplemental

jurisdiction over lone state claims[10] or that a MERA private cause of action had recently been enacted at the time that the federal judge dismissed plaintiffs' lawsuit. Nevertheless, I cannot agree with the majority's post hoc conclusion that the federal court "clearly" would have declined to exercise supplemental jurisdiction over a MERA claim had plaintiffs chosen to include such a claim in their third amended federal complaint.

The majority correctly recognizes that the expenditure of excessive resources by the parties in preparing for trial might be sufficient to sway a federal court to exercise supplemental jurisdiction over state claims, even in the absence of any remaining federal claims. The majority then states that no such factors in the instant case merit such a determination. I disagree. The federal lawsuit had been pending for four and a half years when it was dismissed. Extensive discovery had taken place. The federal action had been mediated, and dismissal occurred on the eve of trial. Under such circumstances, one cannot reasonably conclude that the federal court "clearly" would have refused to exercise its supplemental jurisdiction over any state-related claims that plaintiffs could have included, but did not, in their third amended complaint.[11] Plaintiffs had the power to prevent the state

---

[10] The majority quotes language from a Supreme Court opinion regarding pendent jurisdiction in *United Mine Workers of America v Gibbs*, 383 US 715, 725-727; 86 S Ct 1130; 16 L Ed 2d 218 (1966), to the effect that if the " 'federal claims are dismissed *before trial*, . . . the state claims *should be dismissed as well*' " (emphasis added). However, the Supreme Court has since clarified this statement in *Gibbs* and held that it "does not establish a mandatory rule to be applied inflexibly in all cases." *Carnegie-Mellon v Cohill*, 484 US 343, 350, n 7; 108 S Ct 614; 98 L Ed 2d 720 (1988).

[11] See, e.g., *Taylor v First of America Bank-Wayne*, 973 F2d 1284, 1288 (CA 6, 1992) (interests of judicial economy and fairness favored the dis-

court from having to speculate regarding what the federal court "clearly" would have done.

Despite professing fealty to the vital policy grounds supporting Michigan's broad res judicata doctrine, the majority reaches a result in this case that is incongruent with the doctrine. Moreover, without identifying any countervailing concerns, the majority reaches a result that contravenes the important public policy considerations that led to development of the res judicata doctrine.[12] Indeed, today's ruling may have profoundly negative ramifications for future cases where there are parallel federal and Michigan remedies that arise from the same transaction or occurrence. Under the majority's holding, plaintiffs will have an incentive to split their causes of action and assert only federal claims in federal court. Given the overburdened trial court dockets, this Court ought not give aid and comfort to those who would, as legal strategy (whether formulated before or after dismis-

---

trict court's retention of jurisdiction where the case had been on the court's docket for almost two years and the parties had completed discovery and compiled a voluminous record), and *Purgess v Sharrock*, 33 F3d 134, 138 (CA 2, 1994) (If, however, the dismissal of the federal claim occurs late in the action, after there has been substantial expenditure in time, effort, and money in preparing the pendent state claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary).

[12] The result in this case also seems contrary to the amendment of MCR 2.203(A), which became effective on June 1, 1999. MCR 2.203(A) requires, consistent with res judicata principles, a party to join every claim that the pleader has against the opposing party. MCR 2.203(A)(2), however, states that, if a party does not object to another party's failure to join all claims against it, the joinder rules are waived. Thus, a party's failure to object could prevent application of Michigan's broad res judicata doctrine. Effective, June 1, 1999, MCR 2.203 has been amended to delete the provision that the failure to object will constitute a waiver of joinder rules. By so deleting this waiver language, this Court has broadened our res judicata jurisprudence. Yet, the majority's ruling, issued so closely to the court rule change, narrows our res judicata jurisprudence.

sal of a federal lawsuit), split their cause of action. The majority's holding unfairly deprives the instant defendants, and undoubtedly will be cited to deprive future defendants, of the certainty and closure promoted by res judicata. Our courts can ill afford the narrowing of our res judicata doctrine that this case represents.

### CONCLUSION

Because plaintiffs did not give the federal court an opportunity to exercise its discretion, by pleading state law counts in the federal lawsuit, and because all requirements for applying the doctrine of res judicata in this case have been met, I would reverse the judgments of the Court of Appeals and the trial court and remand this case for entry of an order dismissing plaintiffs' claims against defendants.

YOUNG, J., took no part in the decision of this case.