# STATE OF MICHIGAN

# COURT OF APPEALS

---

PAMELA J. ZELLER, Individually and as Trustee
of the PAMELA J. ZELLER TRUST,

Plaintiff-Appellant,

v

PNC FINANCIAL SERVICES GROUP, INC.,
PNC INVESTMENTS, LLC, PNC BANK NA,
doing business as PNC WEALTH
MANAGEMENT, and DR. CHARLES ZELLER,

Defendants-Appellees.

UNPUBLISHED
October 20, 2016

No. 328086
Kalamazoo Circuit Court
LC No. 2013-000483-CK

---

Before: K. F. KELLY, P.J., and O'CONNELL and BOONSTRA, JJ.

PER CURIAM.

Plaintiffs, Pamela J. Zeller and the Pamela J. Zeller Trust, appeal by leave granted[1] the trial court's order granting summary disposition to defendants PNC Financial Services Group, Inc., PNC Investments, LLC, and PNC Bank NA (collectively, PNC) under MCR 2.116(C)(10), and the trial court's order granting summary disposition to Dr. Charles Zeller under MCR 2.116(C)(7) on grounds of res judicata. We affirm.

## I. FACTUAL BACKGROUND

Pamela and Charles Zeller were married in 1975. In 1990, they formed the Pamela J. Zeller Trust and named Pamela grantor and first trustee. In December 1999, Pamela granted Charles a durable power of attorney. In 2003, Pamela entered into an agency agreement with National City Bank, PNC's predecessor in interest. The agency agreement provided that PNC would manage Pamela's assets, including the trust. Charles filed for divorce in August 2010 and, on October 24, 2011, a judgment of divorce was entered that divided the parties' assets and dissolved the marriage.

---

[1] *Pamela J Zeller Trust v PNC Fin Servs Group*, unpublished order of the Court of Appeals, entered October 23, 2015 (Docket No. 328086).

-1-

Pamela testified during the divorce proceedings that between 2000 and 2010, Charles had directed PNC to transfer about $800,000 of the trust's assets to his own accounts and other, unknown places. Following the divorce, Pamela filed the present action against Charles and PNC. Charles moved for summary disposition under MCR 2.116(C)(7), which the trial court granted on res judicata grounds. Pamela and PNC filed competing motions for summary disposition. The trial court granted summary disposition in favor of PNC, ruling that Charles had possessed written authorization to transfer assets from the trust and that, under the applicable contract language, PNC was not liable to Pamela.

## II. CLAIMS AGAINST PNC

### A. STANDARDS

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." A genuine issue of material fact exists if, when viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Gorman*, 302 Mich App at 116. We review de novo the interpretation of contractual language. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

The goal of contractual interpretation is to honor the parties' intent and to enforce the contract's plain terms. *Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 73; 719 NW2d 890 (2006). We discern the parties' intent from the contract's language. *Id*. If the contract's language is unambiguous, we interpret the contract as a matter of law. *Klapp*, 468 Mich at 469. We construe contractual terms in context, according to their commonly used meanings. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1990). If no reasonable person could dispute the meaning of the contract's plain language, we must enforce that language as written. *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005).

### B. ANALYSIS

First, Pamela contends that the trial court erroneously granted summary disposition to PNC because the agency agreement did not give it authority to distribute trust assets on Charles's orders. We disagree.

Pamela and PNC's agency agreement governed their relationship. The agreement provides in pertinent part:

> 10.    Communications, Notice. *Agent may safely rely and act upon any directions believed by Agent to be genuine, including, but not limited to, directions given in written, verbal, telegraphic, or facsimile form by Principal or by any one or more persons specifically authorized in writing by Principal to give directions to Agent.* Agent may rely upon the continuance of any such authorization until notified in writing to the contrary and shall not be liable for any loss resulting from its reliance thereon if it acts in good faith. . . . [Emphasis added.]

-2-

Pamela's durable power of attorney authorized Charles to make withdrawals from the Trust to

> . . . make gifts of property including the forgiveness of debts (and *to make withdrawals from the Pamela J. Zeller Trust to make gifts of property) to any person, specifically including my Agent*, and to carry out an annual exclusion gifting program or pattern previously established by me, to take advantage of charitable contribution income tax deductions, as may be necessary or beneficial with reference to the ultimate taxation of my estate at the time of my death . . . . [Emphasis added.]

Accordingly, Pamela's durable power of attorney authorized Charles to make withdrawals from the trust and gift those withdrawals to himself. The parties' estate planning attorney averred that he provided a copy of Pamela's estate planning documents, including this power of attorney, to PNC. Charles was thus authorized in writing to give directions to PNC, and PNC had good reason to believe that Charles's directions were genuine.

Pamela contends that the "gifts" section does not apply because Charles did not make gifts to himself for tax purposes. However, the grammar of the gifts paragraph has two distinct clauses, one before the word "and" and the other after the word "and." The paragraph provided Charles with two distinct powers: (1) the power to make withdrawals from the trust to gift property to any person, including himself, and (2) the power to engage in annual gifting for tax benefits. We reject Pamela's argument because the plain language of the power of attorney authorized Charles to make withdrawals from the trust and gift them to anyone, including himself. PNC was entitled to rely on this written authorization under its agency agreement with Pamela. PNC did not act outside of its agreement.

Pamela's claims of conversion and breach of contract, which were both premised on PNC's alleged actions outside of its authority under the parties' contract, necessarily failed. We conclude that the trial court properly granted summary disposition on Pamela's claims against PNC because PNC was entitled to judgment as a matter of law.

## III. CLAIMS AGAINST CHARLES

### A. STANDARDS

This Court reviews de novo the trial court's determination on a motion for summary disposition under MCR 2.116(C)(7), *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008), and reviews de novo whether res judicata bars a subsequent suit, *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 379; 596 NW2d 153 (1999). The doctrine of res judicata "prevents[s] multiple suits litigating the same cause of action." *Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004). Res judicata bars actions where "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id.*

### B. ANALYSIS

Pamela contends that the trial court erroneously granted summary disposition to Charles on res judicata grounds because the trust assets were not in issue in the prior divorce case. We disagree.

The trial court properly ruled that Charles's withdrawal of the trust assets was actually litigated in the divorce case. In that case, Pamela testified regarding Charles's withdrawals from the trust and introduced evidence of those withdrawals. The divorce judgment also necessarily included the trust, or what remained of its assets, because it provided that the divorce judgment applied to those assets that the parties had disclosed. The trust assets were disclosed and discussed during the divorce proceedings, including whether Charles acted wrongly in transferring those assets. The same essential facts were necessary to the divorce action as to this action—specifically, whether Charles inappropriately received, concealed, or otherwise disposed of marital property, including the trust assets. Regardless of where the assets were located at the time of the divorce, they were necessarily part of the property that the parties' divorce decree divided. Accordingly, issues regarding Charles's withdrawals from the trust were actually litigated in the prior proceeding between the parties.[2] We conclude that the trial court properly granted summary disposition to Charles on res judicata grounds.

We affirm. As the prevailing parties, PNC and Charles may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Peter D. O'Connell
/s/ Mark T. Boonstra

---

[2] The trial court also expressly stated that it retained jurisdiction to enforce the judgment of divorce and, accordingly, the trial court would lack jurisdiction in this case under MCL 600.1021(1)(a) to address these issues. See *Bowie v Archer*, 441 Mich 23, 56; 460 NW2d 568 (1992).