# STATE OF MICHIGAN

# COURT OF APPEALS

WEST MICHIGAN FILM, LLC,

        Plaintiff-Appellant,

v

JAMES W. METZ II and DONOVAN MOTLEY,

        Defendants-Appellees.

UNPUBLISHED
June 22, 2017

No.  332273
Ingham Circuit Court
LC No.  13-000649-NZ

Before:  TALBOT, C.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

This appeal arises from a claim of tortious interference with a business relationship or expectancy.  Plaintiff, West Michigan Film, LLC, appeals by right the trial court order granting defendants, James Metz and Donovan Motley, summary disposition under MCR 2.116(C)(7) (claim barred by res judicata or governmental immunity) and MCR 2.116(C)(10) (no genuine issue of material fact).  Because West Michigan Film's claim against Metz and Motley is barred by res judicata, we affirm.

## I.  BASIC FACTS

In a prior appeal, this Court provided the following background:

> In 2006, real estate developer John C. Buchanan, Jr. and his father co-owned Alpinist Endeavors, LLC.  Alpinist Endeavors owned a building that had been converted from a facility where aircraft was built, to a condominium-type development for industrial and/or office use.  After several units remained unoccupied, Buchanan sought an investor interested in buying units and using them as a film studio.  Pursuant to MCL 208.1457, such investment might qualify for an infrastructure tax credit.  Joseph Peters, a real estate developer, was interested in making a deal with Alpinist Endeavors and formed West Michigan Film LLC, the plaintiff in this matter.  Plaintiff would buy two units from Alpinist Endeavors for $40 million and then seek a $10 million tax credit as permitted under the statute.  At some point, public accusations were made that this project was a sham designed to dupe the State into issuing a $10 million tax credit, which prompted a criminal investigation of the "Hangar 42" project.  Defendants, Assistant Attorney General James Metz and Investigator Donovan Motley, were assigned to the investigation, which culminated in criminal charges being filed

-1-

against Buchanan and Peters, the principals, for attempted fraud. Although the charges were eventually dismissed for lack of probable cause, plaintiff was never able to obtain the tax credit.

Subsequently, plaintiff filed this lawsuit against defendants Metz and Motley, bringing one count of tortious interference with a business relationship or expectancy. Plaintiff alleged in its complaint that defendants "conducted a baseless investigation designed to come to a preordained false conclusion that a crime had been committed, and publicly and falsely accused the principal businessmen involved in the deal with crimes against the State." Plaintiff set forth defendants' wrongful acts as including:

> a. Conducting a criminal investigation that deliberately ignored exculpatory facts to reach a preordained conclusion not supported by probable cause;
>
> b. Making false and misleading statements to magistrates to induce the magistrates to issue arrest warrants;
>
> c. Arresting the principal members of West Michigan Film without probable cause;
>
> d. Providing false and misleading information to the Attorney General that formed the basis of repeated announcements to the press that the deal was fraudulent and that the principal parties were guilty of crimes;
>
> e. Telling potential witnesses as the investigation ensued that it was already known that Mr. Peters and Mr. Buchanan were crooks and defendants just needed to talk to the witnesses to confirm what were established facts;
>
> f. Misrepresenting to the court that issued the arrest warrant for Buchanan that Buchanan had solicited a false appraisal from his appraiser in order to overstate the value of the project.

Plaintiff further alleged that defendants' actions "caused a breach or termination of [plaintiff's] business expectancy with the State, as no re-application for the tax credit certificate would be considered during the investigation and prosecution, and the opportunity to complete the deal expired before the prosecution ended." [*West Mich Film, LLC v Metz*, unpublished opinion per curiam of the Court of Appeals, issued January 29, 2015 (Docket No. 319119), pp 1-2.]

The trial court initially granted Metz and Motley summary disposition under MCR 2.116(C)(7) on the grounds that Metz was entitled to absolute prosecutorial immunity and that Motley was entitled to absolute witness immunity. *Id*. at 4. West Michigan Film appealed, and this Court reversed the trial court's decision after determining that Metz was not entitled to absolute prosecutorial immunity and Motley was not entitled to absolute witness immunity. *Id*. at 4-7.

On remand, Metz and Motley again sought summary disposition under MCR 2.116(C)(7), arguing that a prior federal case brought by Buchanan precluded West Michigan Film's claim pursuant to the doctrine of res judicata.[1] Metz and Motley maintained that the federal district court decided they were entitled to governmental immunity on the merits and that "both actions involve the same parties or their privies." Metz and Motley further asserted that "John Buchanan Jr. is the current principal is the current principal of West Michigan Film," and contended that "for all intents and purposes, John Buchanan Jr. is West Michigan Film, and the

---

[1] In 2012, Buchanan filed a suit against Metz and Motley in the United Stated District Court for the Eastern District of Michigan, raising a claim of false arrest against both and a claim of malicious prosecution against Motley. Buchanan also brought state law tort claims of false arrest against Metz and Motley and malicious prosecution against Motley. Buchanan alleged there were numerous improper actions taken by Metz and Motley in their investigation of his involvement with West Michigan Film's attempt to obtain the tax credit. For example, Buchanan claimed that Motley made false statements in "[t]he warrant affidavit" for Buchanan's arrest. Buchanan also alleged that Metz may "have conspired with Defendant Motley to provide false information to the court . . . ." Buchanan asserted that "[t]he accusations have so damaged his reputation that no one in his chosen field would hire him in the Grand Rapids area, and he has been forced to find employment in another state, where the lingering on-line publicity continues to damage his career."

In a published decision issued on September 14, 2015, the Eastern District Federal Court granted defendants summary judgment under FR Civ P 56 (no genuine dispute as to any material fact) on all claims. *Buchanan v Metz*, 132 F Supp 3d 922 (ED Mich, 2015), aff'd 647 F Appx 659 (CA 6, 2016). The court first ruled that Motley had qualified immunity for the federal false arrest and malicious prosecution claims, because when "[e]xamining the totality of the evidence in this factually complex case, the Court cannot say that a reasonable juror could find that no reasonable officer in Motley's position would have thought there was probable cause to make an arrest." *Id*. at 937-938. The court then stated that Motley had governmental immunity from the state law false arrest and malicious prosecution claims. *Id*. at 939-940. "While the decision to seek an arrest warrant was perhaps aggressive," the court reasoned, "Motley has brought forth sufficient evidence demonstrating his honest belief and good-faith conduct in the investigation." *Id*. at 940 (citation and quotation marks omitted).

The court also determined that Metz was entitled to summary judgment on Buchanan's federal false arrest claim. *Id*. at 943. The court had previously ruled[1] "that Metz was not entitled to absolute immunity for any investigative acts that violated Plaintiff's rights, such as falsifying evidence, but was entitled to absolute immunity for any functions relating to the decision to prosecute" Buchanan." *Id*. at 941-942. The court concluded that Buchanan did "not point to *any* unlawful acts that Metz performed when taking an investigative rule [sic]." *Id*. at 942. Finally, the court ruled that Metz was entitled to governmental immunity from Buchanan's state law malicious prosecution claim because Metz's decision to initiate charges against Buchannan "did not rise to the level of malicious behavior that would not be entitled to governmental immunity." *Id*. at 943.

parties in the state and federal cases are identical." They also claimed that "the intentional interference claim" could have been brought in the federal court proceedings. The trial court agreed and granted summary disposition on res judicata grounds.[2]

## II. RES JUDICATA

### A. STANDARD OF REVIEW

West Michigan Film first argues that the trial court erred in granting summary disposition under MCR 2.116(C)(7) (claim barred by res judicata). This Court reviews de novo a ruling on a motion for summary disposition. *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 373; 838 NW2d 720 (2013). "The applicability of legal doctrines such as res judicata and collateral estoppel are questions of law to be reviewed de novo." *Husted v Auto-Owners Ins Co*, 213 Mich App 547, 555; 540 NW2d 743 (1995).

### B. ANALYSIS

The doctrine of res judicata, "also known as claim preclusion," *Bennett v Mackinac Bridge Auth*, 289 Mich App 616, 629-630; 808 NW2d 471 (2010), "was judicially created in order to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication," *Hackley v Hackley*, 426 Mich 582, 584; 395 NW2d 906 (1986) (opinion by BOYLE, J.) (citation and quotation marks omitted). "As a general rule, res judicata will apply to bar a subsequent relitigation based upon the same transaction or events, regardless of whether a subsequent litigation is pursued in a federal or state forum." *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 380; 596 NW2d 153 (1999). "[T]he burden of proving the applicability of the doctrine of res judicata is on the party asserting it." *Baraga Co v State Tax Comm*, 466 Mich 264, 269; 645 NW2d 13 (2002).

"The state courts must apply federal claim-preclusion law in determining the preclusive effect of a prior federal judgment." *Pierson Sand & Gravel*, 460 Mich at 380-381 (citation and quotation marks omitted). In the Sixth Circuit,

> *Res judicata* bars a subsequent action "if the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." [*Becherer v Merrill*

---

[2] Metz and Motley also moved for summary disposition under MCR 2.116(C)(7), asserting that summary disposition was appropriate because governmental immunity barred West Michigan Film's claim. Further, they argued that summary disposition was proper under MCR 2.116(C)(10) (no genuine issue of a material fact) as West Michigan Film did not have a business expectation in the tax credit as a matter of law. The trial court alternatively granted summary disposition on these grounds as well.

*Lynch, Pierce, Fenner, & Smith, Inc*, 193 F 3d 415, 422 (CA 6, 1999), quoting *Bittinger v Tecumseh Prod Co*, 123 F 3d 877, 880 (CA 6, 1997).]

West Michigan Film concedes that the first element is satisfied in this case, i.e., that there was a final decision on the merits issued by a court of competent jurisdiction.

As for the second element, a "basic premise of preclusion law" is that "[a] court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions." *Smith v Bayer Corp*, 564 US 299, 312; 131 S Ct 2368; 180 L Ed 2d 341 (2011). The trial court found that the two actions "involved the same parties" without much elaboration. Although Metz and Motley were parties to both actions, West Michigan Film was not a party to Buchanan's federal suit. Therefore, West Michigan Film argues that the trial court should have considered the six exceptions to the "rule pertaining to nonparties" recognized in *Taylor v Sturgell*, 553 US 880, 893-895; 128 S Ct 2161; 171 L Ed 2d 155 (2008). In *Taylor*, the Court recognized "six categories" of exception to "the rule against nonparty preclusion." *Taylor*, 553 US at 893. The Sixth Circuit summarized the six exceptions as follows:

> (1) a person agrees to be bound by determination of issues in an action between others; (2) there is a pre-existing substantive legal relationship between the person to be bound and a party to judgment, for instance preceding and succeeding property owners, bailee and bailor, or assignee and assignor; (3) the nonparty was adequately represented by someone with the same interests who was a party, as in a properly conducted class action or suit brought by trustee, guardian or other fiduciary; (4) the nonparty assumed control over the prior litigation; (5) the nonparty served as proxy for a party; and (6) a special statutory scheme expressly foreclosed successive litigation by nonlitigants. [*Ludwig v Twp of Van Buren*, 682 F 3d 457, 462 (CA 6, 2012).]

However, the exceptions stated in *Taylor* against nonparty preclusion are not rigid. *Taylor*, 553 US at 893 n 6. And "[r]es judicata bars those in privity with parties from brining suit later." *Sanders Confectionery Prods, Inc v Heller Fin, Inc*, 973 F 2d 474, 481 (CA 6, 1992). "Privity in this sense means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Id*. Therefore, because Buchanan controlled both the federal litigation and the current litigation, he is in privity with West Michigan Film. And, as such, the second element of federal res judicata is satisfied in this case. See *Becherer*, 193 F 3d at 422; *Sanders*, 973 F 2d at 481.

"In order for the third and fourth elements to be satisfied, 'there must be an identity of the causes of action—that is, an identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Holder v City of Cleveland*, 287 Fed Appx 468, 470-471 (CA 6, 2008), quoting *Westwood Chemical Co v Kulick*, 656 F 2d 1224, 1227 (CA 6, 1981). "Where the two causes of action arise from the 'same transaction, or series of transactions,' the plaintiff should have litigated both causes in the first action and may not litigate the second issue later." *Id.* at 471, quoting *Rawe v Liberty Mut Fire Ins Co*, 462 F 2d 521, 529 (CA 6, 2006). "The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap, barring claims arising from the same

transaction." *United States v Tohono O'Odham Nation*, 563 US 307, 316; 131 S Ct 1723; 179 L Ed 2d 723 (2011) (citation and quotation marks omitted).

The trial court analyzed the third element by considering whether Buchanan could have raised the tortious interference claim in federal court. The trial court ruled that he could have done so because even though the federal claims contained different elements, "all three causes of action arise out of the same set of operative facts" and "the evidence Buchanan needed to attempt to prove the federal case is identical to the evidence West Michigan Film needs . . . in this case." Similarly, the trial court found the forth element was satisfied, because the claims arose "out of the same transaction and core operative facts . . ."

On appeal, West Michigan Film argues that "[c]omparison of the two complaints demonstrates that the two cases raised entirely different causes of action by different parties." West Michigan Film highlights the different legal elements required by the respective claims, and notes that the complainants sought different damages stemming from different alleged harms. But such differences are not dispositive. The pertinent test is whether the causes of actions arose from the "same transaction, or series of transactions[.]" *Holder*, 287 Fed Appx at 471. To that point, West Michigan Film notes that its "cause of action accrued when the processing and discussion [of the tax credit] stopped; Buchanan's only accrued when he was arrested months after the election, in January 2011." West Michigan Film also emphasizes that its cause of action concern Peters's arrest, which was "effected the day before the primary, without the Request for Initiating Litigation required by AG policy to ensure review before hasty arrests; Buchanan was arrested months later, after Metz went through the procedure." In sum, West Michigan Film argues that the federal case involved the allegedly wrongful actions taken by Metz and Motley during the investigation of Buchanan and his arrest, while this case concerns the wrongful actions taken during the investigation of Peters and his subsequent arrest.

Although there are alleged wrongful actions specific to each case, both cases still arose from the same "series of transactions," i.e., West Michigan Film's attempt to obtain a $10 million dollar tax credit. Further, Buchanan had an interest in West Michigan Film obtaining the tax credit because the property deal was contingent on it. Indeed, the federal court found that Buchanan "sometimes ghostwrote communications for Peters, composing entire emails to [an employee for the Michigan Economic Development Corporation and a commissioner for the Michigan Film Office], signed with Peters's name." *Buchanan*, 132 F Supp 3d at 927. The record also suggests that Metz and Motley conducted one investigation that encompassed both Peters and Buchanan. Although Buchanan made specific allegations regarding Motley, most of the allegations against Metz refer generally to his conduct during the investigation, similar to the general allegations plaintiff presented in this case. And West Michigan Film concedes that the "causes of actions" were "based on facts that might overlap to some degree . . ." Additionally, one of the goals underlying the doctrine of res judicata is the promotion of "judicial economy by preventing needless litigation." *Parklane Hosiery Co, Inc v Shore*, 439 US 322, 326; 99 S Ct 645; 58 L Ed 2d 552 (1979). According to Metz and Motley, "voluminous discovery [occurred] in the federal case," which included Peters, Metz, and Motley being deposed. The fact that the parties rely on discovery conducted in federal court demonstrates the overlap between the cases. Furthermore, as discussed, Buchanan had West Michigan Film's litigation rights during the federal court proceedings, and therefore could have sought to join West Michigan Film as a

party. For those reasons, we agree with the trial court that West Michigan Film's claim should have been brought with the prior action.

Because all four elements are met for federal res judicata, the trial court did not err in granting summary disposition on that basis.[3]

Affirmed. Metz and Motley, as the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Michael J. Talbot
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause

---

[3] Given our resolution, we need not reach West Michigan Film's argument that the trial court erred in finding that its claims against Metz and Motley were barred by governmental immunity, or, alternatively, were barred under MCR 2.116(C)(10) because there was no genuine issue of material fact on the underlying claim and Metz and Motley were entitled to judgment as a matter of law.