*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MECOSTA COUNTY MEDICAL CENTER, doing business as SPECTRUM HEALTH BIG RAPIDS, SPECTRUM HEALTH HOSPITALS, SPECTRUM HEALTH PRIMARY CARE PARTNERS, doing business as SPECTRUM HEALTH MEDICAL GROUP, MARY FREE BED REHABILITATION HOSPITAL, and MARY FREE BED MEDICAL GROUP,

        Plaintiffs-Appellants,

v

METROPOLITAN GROUP PROPERTY AND CASUALTY INSURANCE COMPANY and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

        Defendants-Appellees.

UNPUBLISHED
March 24, 2020

No. 345868
Kent Circuit Court
LC No. 17-007407-NF

Before: MURRAY, C.J., and METER and K. F. KELLY, JJ.

PER CURIAM.

Plaintiffs, medical providers, appeal as of right the trial court's order granting summary disposition in favor of defendants, insurance companies, concluding that their claims were barred by res judicata and collateral estoppel.[1] For the reasons stated below, we reverse.

---

[1] The medical providers include Mecosta County Medical Center, doing business as Spectrum Health Big Rapids, Spectrum Health Hospitals, and Spectrum Health Primary Care Partners doing business as Spectrum Health Medical Group. We refer to these plaintiffs collectively as Spectrum Health. The medical providers also include Mary Free Bed Rehabilitation Hospital and Mary Free Bed Medical Group. We refer to these plaintiffs collectively as Mary Free Bed. Also for ease of

## I. BASIC FACTS AND PROCEDURAL HISTORY

Jacob Myers and Morgan Watson were in a relationship, and the couple purchased a 2003 Mercury Mountaineer in March 2016.  The vehicle was insured by Watson's grandmother, Joann Hyatt, through Metropolitan Group Property and Casualty Insurance Company.  Watson was an included driver on the policy and the assigned driver of the Mountaineer.  Hyatt estimated that Myers and Watson lived with her for approximately two months after she insured the Mountaineer.[2]

On August 15, 2016, Myers drove the Mountaineer to work, swerved to possibly avoid a traffic cone or jogger, and suffered serious injury when he drove off the road.  Myers or his representative assigned his right to no-fault benefits for the care provided by Spectrum Health and Mary Free Bed before August 2017.

On August 15, 2017, Spectrum Health and Mary Free Bed sued Metropolitan and State Farm to recover the costs of the medical products and services that they provided to treat Myers's injuries arising from the automobile accident.  Spectrum Health alleged that its medical center in Big Rapids was owed $37, 408.64, that its hospitals were owed $449,346.60, and that its physician group was owed $62,826.  Mary Free Bed alleged that its hospital was owed $51,174.94, and that its physicians' group was owed $4,402.37.  Plaintiffs asserted claims for breach of contract premised on Myers's assignment of benefits and as his designated authorized representative.  The medical providers sought a declaration that Metropolitan or State Farm was obligated under the no-fault act to provide coverage for the medical expenses arising from Myers's injuries in the accident at issue.

In October 2017, Metropolitan moved to change venue to Wayne County.  Metropolitan noted that its registered office was in Wayne County and stated that there were then two additional lawsuits involving the same accident before the Wayne Circuit Court.  One case involved a priority dispute between State Farm and Metropolitan, and the other involved Myers's suit against Metropolitan and State Farm for no-fault benefits.  Metropolitan asked the trial court to transfer the case to Wayne County, but the trial court denied the motion in December 2017.

In June 2018, Metropolitan moved for summary disposition under MCR 2.116(C)(10).  It argued that the claims by Spectrum Health and Mary Free Bed were barred under MCL 500.3113(b) because Myers and Watson, as the owners of the Mountaineer, did not maintain no-fault coverage on the vehicle.  Alternatively, Metropolitan argued that Hyatt made a material

---

reference, we will refer to defendant Metropolitan Group Property and Casualty Insurance Company as Metropolitan and State Farm Mutual Automobile Insurance Company as State Farm.

[2] We acknowledge that there is other testimony addressing the couple's residency.  However, it is not pertinent to our resolution of the issue.  We merely provide an overview and do not resolve any conflicts in the evidence.

misrepresentation when she added the Mountaineer to her policy and failed to identify Myers as an owner or driver, which voided the policy.

In August 2018, Metropolitan moved for summary disposition under MCR 2.116(C)(7) and (C)(10). It noted that the trial court in Wayne County had granted Metropolitan's motion for summary disposition in Myers's claim for no-fault benefits after it determined that he was ineligible for benefits under MCL 500.3113(b).[3] Metropolitan maintained that the doctrines of res judicata and collateral estoppel applied and barred the claims by Spectrum Health and Mary Free Bed. Metropolitan also moved for permission to add res judicata and collateral estoppel as affirmative defenses.

State Farm subsequently moved to amend its affirmative defenses in the same way and moved for summary disposition on the ground that the claims by Spectrum Health and Mary Free Bed were barred by the doctrines of res judicata and collateral estoppel.

In response to Metropolitan's motions, Spectrum Health and Mary Free Bed argued that neither res judicata nor collateral estoppel applied to their claims because they were not parties to the Wayne County lawsuit and were not in privity with Myers. They argued that Myers no longer had any right to the claims at issue under the law applicable to assignments and, therefore, could not bind them in his lawsuit in Wayne County. They also argued that discovery had shown that Myers and Watson resided with a resident relative of Watson—Hyatt—who insured the Mountaineer. As such, they stated, MCL 500.3113(b) was not applicable as a defense to their claims. Moreover, because any fraud committed by Hyatt would still require the trial court to examine the equities before voiding the policy, Spectrum Health and Mary Free Bed argued that the trial court had to deny the motions for summary disposition. The trial court granted leave to amend the affirmative defenses.

The trial court held a hearing on the dispositive motions. At the hearing, counsel for Spectrum Health and Mary Free Bed admitted that they would have to prove that Myers was entitled to no-fault benefits, but argued that whether that defense applied was a separate matter from whether the Wayne County trial court's decision on that issue was binding under the doctrines of res judicata or collateral estoppel. They maintained that Myers had no authority to pursue the claims involving the hospitals once he assigned the claims, and that Metropolitan and State Farm should have moved to dismiss his claims in Wayne County on that basis. They did not do so and should not now be heard to complain that the trial court could decide the issue anew. After

---

[3] The Wayne County trial court granted the motion for summary disposition because Myers had not "personally" obtained no-fault coverage. Although not pertinent to the claim preclusion issue raised in this appeal, we note that in *Dye v Esurance Prop & Cas Ins Co*, 504 Mich 167, 192-193; 934 NW2d 674 (2019), our Supreme Court held that "an owner or registrant of a motor vehicle involved in an accident is *not* excluded from receiving no-fault benefits when someone *other* than that owner or registrant purchased no-fault insurance for that vehicle because the owner or registrant of the motor vehicle has nonetheless 'maintained' no-fault insurance." (Emphasis added.) For whatever reason, Myers did not file a claim of appeal to obtain the benefit of the *Dye* decision. Plaintiffs, not being parties to the Wayne county suit, were unable to file a claim of appeal.

considering the arguments, the trial court agreed that the doctrines of res judicata and collateral estoppel applied and barred the claims at issue. Specifically, the trial court cited *TBCI, PC v State Farm Mut Auto Ins Co*, 289 Mich App 39; 795 NW2d 229 (2010), for the proposition that a medical provider cannot make a claim against an insurance company when the insured's claims have been dismissed with prejudice in a different action. For that reason, the trial court dismissed all the claims by Spectrum Health and Mary Free Bed.

## II. APPLICABLE LAW

### A. SUMMARY DISPOSITION

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018). Summary disposition is appropriate pursuant to MCR 2.116(C)(7) when the claims are barred because of a release.

Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties. MCR 2.116(G)(4), (G)(5); *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 68; 919 NW2d 439 (2018).

### B. ASSIGNMENT

An assignment is defined as

> A transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one's whole interest in an estate, or chattel, or other thing. It is the act by which one person transfers to another, or causes to vest in another, his right of property or interest therein. [*Allardyce v Dart*, 291 Mich 642, 644-645; 289 NW 281 (1939) (quotation marks and citation omitted).]

An assignee stands in the shoes or in the place of, or in the same position as, the assignor. *Crossley v Allstate Ins Co*, 139 Mich App 464, 470; 362 NW2d 760 (1984). Therefore, an assignee generally obtains only the rights possessed by the assignor at the time of the assignment. *Shimans v Stevenson*, 248 Mich 104, 108; 226 NW 838 (1929).

An assignee is not bound by a judgment that his predecessor in interest obtained after the assignment at issue, even though the defendants raised the assignment as a defense, because the assignee was not in privity with the assignor. *Aultman, Miller & Co v Sloan*, 115 Mich 151, 154; 73 NW 123 (1897). A contrary rule would allow an assignor to cut off the rights of the assignee without affording him an opportunity to be heard. *Id*. Indeed, it may constitute a deprivation of property without due process of law to extend privity to bind an assignee by a judgment entered against his or her assignor that occurred after the assignor assigned his or her rights in the property. *Postal Tel Cable Co*, 247 US 464, 476; 38 S Ct 566; 62 L Ed 1215 (1928). In this state rather, for purposes of property law, an assignee is in privity with the assignor only up to the time of the

assignment. See *Howell v Vito's Trucking & Excavating Co*, 386 Mich 37, 43; 191 NW2d 313 (1971). Accordingly, if the party asserting preclusion has no other basis for establishing privity beyond the fact that the assignee succeeded to the assignor's interest, the party asserting preclusion will not prevail unless the judgment was entered before the transfer at issue. *Id.*

## C. RES JUDICATA AND COLLATERAL ESTOPPEL

Whether the application of res judicata bars a subsequent suit presents a question of law that the appellate court reviews de novo. *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 379 596 NW2d 153 (1999). Res judicata prevents relitigation of a claim premised on the same underlying transaction or events as a prior suit. *Stoudemire v Stoudemire*, 248 Mich App 325, 334; 639 NW2d 274 (2001). The doctrine, a judicial creation, was designed to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication by preventing inconsistent decisions. *Pierson Sand & Gravel, Inc*, 460 Mich at 380.

The elements of res judicata are:

(1) the prior action was decided on the merits, (2) the prior decision resulted in a final judgment, (3) both actions involved the same parties or those in privity with the parties, and (4) the issues presented in the subsequent case were or could have been decided in the prior case. [*Duncan v State*, 300 Mich App 176, 194; 832 NW2d 761 (2013).]

"Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in that prior proceeding." *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 528; 866 NW2d 817 (2014). Similar to res judicata, collateral estoppel "is a flexible rule intended to relieve parties of multiple litigation, conserve judicial resources, and encourage reliance on adjudication." *Id*. at 529.

"Generally, application of collateral estoppel requires (1) that a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) that the same parties had a full and fair opportunity to litigate the issue, and (3) mutuality of estoppel." [*Id*.]

## III. ANALYSIS

## A. APPLICATION OF RES JUDICATA

To establish the requirements for res judicata, it must be shown that (1) a prior action was decided on the merits, (2) the prior decision resulted in a final judgment, (3) both actions involved the same parties or their privies and (4) the issues presented in the subsequent case were or could have been decided in the prior case. *Duncan*, 300 Mich App at 194. Because the last two elements

of res judicata were not satisfied, the trial court improperly granted summary disposition in favor of defendants.

Plaintiffs, as the assignees of Myers' interest, were not bound by the judgment rendered against Myers in the Wayne County action because they were not in privity with Myers and a decision to the contrary would extinguish their rights without providing an opportunity to be heard. *Aultman, Miller & Co*, 115 Mich at 154. Therefore, defendants could not establish that both actions involved the same parties or their privies. Further, because Myers assigned his rights to pursue the claims involving Spectrum Health and Mary Free Bed, those issues could not be decided in the Wayne County action because Myers had divested himself of the pursuit of those claims through the assignments. *Duncan*, 300 Mich App at 194. Therefore, defendants could not establish that the claims by Spectrum Health and Mary Free Bed "could have been decided in the prior case." *Id*.

On appeal, Metropolitan and State Farm make much of the fact that an assignee stands in the shoes of the assignor, and they suggest that legal maxim requires courts to extend privity beyond the date of the assignor's assignment. See, e.g., *First of America Bank v Thompson*, 217 Mich App 581, 587; 552 NW2d 516 (1996) ("An assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed."). That maxim, however, is nothing more than a shorthand reference for the well-settled principle that the assignee of property obtains no greater rights than the assignor had, and remains subject to the same defenses that would be applicable to the assignor. See *Burkhardt v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004). It does not mean that the assignee remains in privity with the assignor in perpetuity, such that the assignor can intentionally or unintentionally alter the assignee's rights after the assignment. To the contrary, as Spectrum Health and Mary Free Bed correctly note, with certain exceptions, the assignor relinquishes all power to alter the assignee's rights in the property. See *Saginaw Fin Corp v Detroit Lubricator Co*, 256 Mich 441, 443-444; 240 NW 44 (1932) ("The rule that an assignee of a nonnegotiable chose takes subject to defenses means, of course, defenses existing at the time of the assignment. After assignment, the assignor loses all control over the chose, and cannot bind the assignee, by estoppel or otherwise."). To be sure, Metropolitan and State Farm can still assert any defenses that they may have—including a claim of fraud to invalidate the policy and the violation of MCL 500.3113(b)—to defeat the claims by Spectrum Health and Mary Free Bed. What is clear, however, is that the trial court had no authority to deprive Spectrum Health and Mary Free Bed of their day in court on the ground that Spectrum Health and Mary Free Bed were Myers's privies because Myers assigned his rights under the insurance policy to them. Once Myers assigned his right, nothing he did or suffered after he parted with his rights could—on the facts before this Court—affect the rights previously vested in Spectrum Health and Mary Free Bed because they were no longer his privies by the time of his litigation with Metropolitan and State Farm. See *Postal Tel Cable Co*, 247 US at 475; *Howell*, 386 Mich at 43. Accordingly, the trial court erred by concluding that the elements of res judicata were satisfied and that summary disposition was appropriate in favor of defendants.

Moreover, a contrary result cannot be compelled. Res judicata is a judicially created doctrine designed to relieve parties of the costs of multiple lawsuits and conserve judicial resources. *Pierson Sand & Gravel, Inc*, 460 Mich at 380. However, in this instance, application of the doctrine would obviate the assignment and effectively render it null and void and deprive Spectrum Health and Mary Free Bed of the right to pursue their claims.

## B. *TBCI, PC v STATE FARM MUT AUTO INS CO*

The trial court concluded that the *TBCI* decision demonstrated that application of res judicata was appropriate. We disagree.

In *TBCI*, Eric Afful alleged that he was injured in an automobile accident, causing him to receive medical treatment and attendant care services. Defendant State Farm refused to pay, asserting that Afful's claims were fraudulent. Afful filed suit against State Farm, but the jury found that Afful's claims for attendant care services were fraudulent, and therefore, coverage was barred. The plaintiff, *TBCI*, also provided therapeutic and rehabilitative services to Afful, and defendant refused to pay for these services, causing the plaintiff to file suit. After the jury returned its verdict, the trial court granted the defense motion for summary disposition premised on res judicata. On appeal, this Court affirmed, concluding that plaintiff was attempting to relitigate the same issue and was in privity with Afful. *TBCI*, 289 Mich App at 43-44.

The trial court erred in applying *TBCI* to the facts of this case. Myers assigned his rights to pursue his claim for the medical services provided by Spectrum Health and Mary Free Bed, and they were never given the opportunity to litigate those rights, and there was no privity. *Aultman, Miller & Co*, 115 Mich at 154.

Finally, plaintiffs set forth two additional issues addressing policy coverage and fraud. Although these issues were raised before the trial court, the trial court declined to rule on those challenges in light of its res judicata decision. Because we are an error correcting court, *Burns v Detroit (On Remand)*, 253 Mich App 608, 615; 660 NW2d 85 (2002), we reverse the trial court's summary disposition decision and remand for resolution of the outstanding issues.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly