*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERTS ORTHOPEDIC SERVICES,

      Plaintiff-Appellant,

v

ALLSTATE INSURANCE COMPANY,

      Defendant-Appellee.

UNPUBLISHED
February 4, 2021

No. 349786
Wayne Circuit Court
LC No. 18-009627-NI

Before: FORT HOOD, P.J., and CAVANAGH and TUKEL, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition to defendant under MCR 2.116(C)(7). Plaintiff argues that the trial court erred in finding that the federal court's order in *Omar v Allstate Ins Co (Omar I)*, opinion of the United States District Court for the Eastern District of Michigan, issued March 14, 2019 (Case No. 17-cv-13400), which granted summary disposition to defendant in a case based on the same accident at issue here, barred plaintiff's claim against defendant under the doctrine of res judicata. We affirm the order of summary disposition in favor of defendant.

## I. UNDERLYING FACTS

In September 2016, Danny Omar was a passenger in a vehicle driven by Marletta Boyd when the vehicle was hit by another car. Omar consequently suffered bodily injuries from the accident. He then sought and received medical treatment for his injuries from plaintiff. Because Omar did not have insurance at the time of the accident, he submitted a claim for no-fault benefits under Boyd's insurance policy with defendant. In 2017, Omar sued defendant, alleging that defendant failed or unreasonably refused to pay plaintiff no-fault benefits in accordance with Boyd's insurance policy. After removing Omar's case to federal court, defendant filed a motion for summary judgment on April 19, 2018. *Omar I*, p 1.

In February 2018, while the federal court action was pending, plaintiff and Omar entered into an assignment of rights agreement, in which Omar assigned to plaintiff "all rights and privileges to and remedies for payment of health care services, products, or accommodations ("services"), provided by Assignee to Assignor to which Assignor is or may be entitled under

Chapter 31 of the Insurance Code (MCL 500.3101, et seq), the No-Fault Act." The assignment further stated, in part:

> Assignor hereby certifies its understanding that while Assignee may, pursuant to this assignment, pursue payment from a person or entity other than Assignor, this agreement may be revoked by Assignee if it determines, or a determination is made pursuant to judicial proceedings, that Assignor lacks coverage or that the services subject to this assignment are not payable by any such person or entity for any reason under Chapter 31 of the Insurance Code (MCL 500.3101, et seq), any applicable policy of insurance, and/or due to any actions or conduct of Assignor.

> Assignor and Assignee agree that in the event any terms or provisions of this agreement are declared invalid or unenforceable by any Court or Federal or State Government Agency having jurisdiction over the subject matter of this agreement, the remaining terms and provisions that are not affected thereby shall remain in full force and effect.

After the assignment was executed, plaintiff sued defendant in Wayne Circuit Court, alleging that defendant unreasonably refused to pay plaintiff for the medical services provided to Omar in accordance with defendant's statutory and contractual obligations. Defendant denied plaintiff's claims for no-fault benefits and asserted that any claim by plaintiff was barred, and that any subsequent assignment of rights was invalid due to fraudulent statements or misrepresentations by Boyd, which voided the underlying insurance policy.

Meanwhile, the federal court granted defendant's motion for summary judgment in *Omar I*,[1] finding there was no genuine dispute of material fact that Boyd's policy was obtained through material misrepresentation and, as a result, Omar was not entitled to recover no-fault benefits from defendant. *Omar I*, op at 1-2. The federal court further stated:

> Regardless, the equities here weigh in favor of rescission. The Court gave all parties the opportunity to brief how [*Bazzi v Sentinel Ins Co*, 502 Mich 390; 919 NW2d 20 (2018),] applies to the case. In doing so, [Omar and plaintiff-providers] failed to provide evidence as to why the equities weigh in favor of forcing Defendants to pay Omar's claim, whereas Defendants provided significant evidence of Omar's dishonesty in conjunction with his claim. Defendants provided evidence that Omar stated in his deposition that his last day of work was the day of the accident and that he had never been sick before, but that five months before the accident, in conjunction with a Social Security claim, he stated that he had stopped working in 2012 due to back and knee problems. Given the evidence of Omar's wrongdoing in connection with his claim, and in the absence of wrongdoing by

---

[1] "Michigan's standards for summary disposition mirror the standards for summary judgment in federal court." *Estate of Taylor by Taylor v Univ Physician Group*, 329 Mich App 268, 277 n 2; 941 NW2d 672 (2019).

Defendants, the equities weigh in favor of rescission. [*Id*. at 2 n 2 (citations omitted).]

Consequently, Omar was not entitled to receive any no-fault benefits from defendant. *Id*. at 2.

Omar filed a motion for reconsideration in federal court, arguing there was no evidence that he participated in any fraud related to the procurement of Boyd's policy and, as a result, the equities should have balanced in his favor. The federal court denied Omar's motion, stating that Omar's innocence in the procurement of Boyd's policy did not tip the equities in Omar's favor. *Omar v Allstate Ins Co (Omar II)*, opinion of the United States District Court for the Eastern District of Michigan, issued October 30, 2019 (Case No. 17-cv-13400), p 1. The federal court reasoned that because *Bazzi* does not limit the "[c]ourt's equity analysis to the parties' conduct during the procurement of the policy[,]" the federal court properly considered Omar's misconduct while pursuing his claim for no-fault benefits and defendant's lack of wrongdoing in the balance of equities. *Id*. at 2. Plaintiff did not appeal the federal district court's judgment against it.

Following the entry of the summary judgment order in federal court, defendant filed a motion for summary disposition in this case, noting that the federal court ruled defendant was entitled to rescind Boyd's policy and have it declared void *ab initio* because Boyd made misrepresentations in her application for the policy. Once rescinded, defendant argued, neither Omar nor plaintiff was entitled to no-fault benefits from defendant under Boyd's policy. Plaintiff responded, arguing that defendant failed to present any argument that the equities favored rescission of Boyd's policy as to plaintiff's claims. The trial court in this case, in granting summary disposition, stated that it was doing so "because of the federal court order."

Plaintiff filed a motion for reconsideration, arguing that insurance policies are not automatically void *ab initio* when an innocent third party is involved and, as a result, the trial court committed a palpable error by granting defendant's motion without properly weighing the equities. The trial court denied plaintiff's motion for reconsideration. This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

A trial court's summary disposition ruling is reviewed de novo. *Walters v Nadell*, 481 Mich 377, 381; 751 NW2d 431 (2008). "MCR 2.116(C)(7) permits summary disposition 'because of release, payment, prior judgment, [or] immunity granted by law.' " *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015), quoting MCR 2.116(C)(7) (alteration in original).

A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence. If such material is submitted, it must be considered. MCR 2.116(G)(5). Moreover, the substance or content of the supporting proofs must be admissible in evidence . . . . Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted by

-3-

documentation submitted by the movant. [*Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999) (quotation marks and citations omitted).]

Furthermore,

> [w]e must consider the documentary evidence in a light most favorable to the nonmoving party for purposes of MCR 2.116(C)(7). If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. But when a relevant factual dispute does exist, summary disposition is not appropriate. [*Moraccini v City of Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012) (citations and quotation marks omitted).]

## B. ASSIGNMENT

Before turning to the dispositive issue of res judicata in this case, we must first address the issue of assignment and the effect of Omar's assignment of his claims to plaintiff in this case. It is well-settled that a medical provider has no independent statutory cause of action against a no-fault insurer for recovery of no-fault benefits. *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 218-219; 895 NW2d 490 (2017). Instead, the medical provider's default recourse is to seek payment directly from the injured person. *Id*. at 217.

An injured person, however, retains the ability to assign his or her right to past or presently due benefits directly to the provider. *Id*. at 217 n 40. When such an assignment occurs, the provider, as assignee, "stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Burkhardt v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004). As a result, since the provider-assignee "stands in the shoes of the assignor," the provider-assignee only "possesses whatever right [the assignor] would have to collect past due or presently due benefits" from the no-fault insurer. *Prof Rehab Assoc v State Farm Mut Auto Ins Co (On Remand)*, 228 Mich App 167, 177; 577 NW2d 909 (1998). Indeed, because a medical provider stands in the shoes of the assignor-insured, "if an insured's claim is substantively barred on the merits, any derivative claims necessarily fail as well." *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 524; 895 NW2d 188 (2016). As discussed above, the federal court in *Omar I* concluded that Omar was not entitled to any no-fault benefits from defendant because, in part, the equities balanced in favor of rescinding defendant's insurance contract with Boyd. Consequently, Omar's claim for no-fault benefits, which was premised on the same insurance contract, was substantively barred on the merits and any derivative claim plaintiff has must similarly fail. See *id*.

## C. RES JUDICATA

Plaintiff argues that res judicata does not apply in this case because the federal court in *Omar I* ruled on a different claim for no-fault benefits than is at issue in this case. We disagree. The federal court in *Omar I* concluded that rescission of Boyd's policy was appropriate and, therefore, that Omar was not entitled to any no-fault benefits from defendant based on the same contract; it never reached the derivative issue of which specific no-fault benefits Omar arguably would have been entitled to if there had been a valid contract. *Omar I*, op at 2. Plaintiff, as

-4-

assignee, had the identical rights Omar had prior to assignment; as the federal court found, the fact that Omar had no right to collect benefits doomed plaintiff's derivative claim. Res judicata is a judicial doctrine constructed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v McCurry*, 449 US 90, 94; 101 S Ct 411; 66 L Ed2d 308 (1980). The "main purpose" of res judicata "is to insure finality in a cause of action." *Rogers v Colonial Fed S & L Ass'n of Grosse Pointe Woods*, 405 Mich 607, 617; 275 NW2d 499 (1979), overruled in part on other grounds by *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280; 731 NW2d 29 (2007). Michigan courts consistently apply the principle broadly in practice. *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 380; 596 NW2d 153 (1999).

This broad application encompasses claims previously litigated, as well as "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Dart v Dart*, 460 Mich 573, 586-587; 597 NW2d 82, 88 (1999). Res judicata bars a party's subsequent action if "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004). Finally, "the burden of proving the applicability of the doctrine of res judicata is on the party asserting it." *Baraga Co v State Tax Comm*, 466 Mich 264, 269; 645 NW2d 13 (2002).

Orders of summary disposition are generally adjudications on the merits. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 418-419; 733 NW2d 755 (2007). The federal court's order granting summary judgment to defendant in *Omar I*, op at 2, had the same effect as an order of summary disposition, see *Estate of Taylor by Taylor v Univ Physician Group*, 329 Mich App 268, 277 n 2; 941 NW2d 672 (2019). The federal court in *Omar I* addressed the merits of Omar's claim for no-fault benefits, weighed the equities, and decided that rescission of Boyd's insurance contract was appropriate; the federal court thus granted summary judgement. *Omar I*, op at 2 n 2. Thus, the federal court's decision in *Omar I* was a decision on the merits and fulfills the first requirement for res judicata to apply here. See *Washington*, 478 Mich at 418-419; *Adair*, 470 Mich at 121.

The second requirement of the doctrine of res judicata is that both actions must involve the same parties or their privies. *Adair*, 470 Mich at 121. Privies are parties "so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Id*. at 122. "The outer limit of the doctrine traditionally requires both a 'substantial identity of interests' and a 'working functional relationship' in which the interests of the nonparty are presented and protected by the party in litigation." *Id*. (citation omitted).

In the federal case, Omar, as plaintiff's assignor of rights, certainly "represent[ed] the same legal right that the later litigant is trying to assert." *Adair*, 470 Mich at 122. As assignee, plaintiff had "all rights and privileges to and remedies for payment" which Omar had, see Assignment, not more and not less. Plaintiff argues that he and Omar are not privies because the legal right at issue in *Omar I* is different from the legal right at issue here because, in *Omar I*, Omar sought no-fault benefits for different services than those for which plaintiff is seeking reimbursement in this case. But plaintiff's argument misses the mark. Plaintiff's claim rests entirely on the proposition that Omar could recover under Boyd's insurance contract, and could convey that right of recovery to plaintiff; the threshold question therefore is whether Omar had any rights under the insurance

contract, because without such rights neither his claim, nor plaintiff's derivative claim based on Omar's rights, had any force. Thus, the issue in *Omar I* was whether defendant's insurance contract with Boyd should be rescinded; because it concluded that Boyd's contract should be rescinded, the federal court never reached the derivative issue of whether Omar would have been entitled to any specific no-fault benefits if the underlying contract had been valid. *Omar I*, op at 2. Indeed, by rescinding Boyd's insurance contract with defendant, the *Omar I* court held that defendant was not liable to pay *any* no-fault benefits that arose from the accident in which Omar and Boyd were involved because, as a matter of law, the contract of insurance never existed. *Id*.

Here, plaintiff seeks to relitigate that same issue and for us to consider whether Boyd's insurance contract with defendant should be rescinded and whether plaintiff, standing in Omar's shoes, is entitled to any no-fault benefits. But before we can address whether defendant is responsible for the specific no-fault benefits at issue in this case we would first have to determine whether Omar, and by extension plaintiff, was entitled to any no-fault benefits at all. Omar litigated that exact issue in *Omar I* and the federal court ruled against him. Thus, Omar and plaintiff are in privity because they had not only a substantial identity of interests in whether Boyd's insurance contract with defendant was rescinded, they had the identical interest—plaintiff did not have even a potentially valid claim unless Omar did.

Plaintiff also argues that its assignment of benefits from Omar protects plaintiff from the effect of the federal court's order because, based on the assignment, Omar could not make a claim in *Omar I* for the no-fault benefits at issue in this case. We need not reach that specific issue because, even with the assignment, Omar and plaintiff are in privity. As discussed earlier, an assignee cannot obtain any greater right than the assignor had with respect to past due or presently due benefits from the no-fault insurer. *Prof Rehab Assoc*, 228 Mich App at 177. "To rule otherwise would be to give such an assignment some strange alchemistic power to transform a dross and worthless cause of action into the pure gold from which a judgment might be wrought." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 205; 920 NW2d 148 (2018) (quotation marks and citation omitted). Indeed, plaintiff stands in the shoes of Omar, by way of the assignment; and the federal court's ruling in *Omar I* that Omar was not entitled to any no-fault benefits applies equally to plaintiff, due to the rescission of defendant's insurance contract with Boyd. Simply put, plaintiff and Omar are privies because they each sought a determination, in different cases, that Omar was entitled to no-fault benefits, and the federal court ruled against their position on the merits.[2]

Finally, for the doctrine of res judicata to bar the relitigation of a claim, the matter in question must have been decided in the first case, or be one which could have been so decided. *Adair*, 470 Mich at 121. The test for this element is the "transactional" test. *Id*. at 124. The "transactional" test provides that "the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of

---

[2] Plaintiff's position is that a contract can be rescinded as to some claims, but not as to other claims. However, the effect of rescission is that the entirety of the contract, as a legal matter, never existed. *Bazzi*, 502 Mich at 408. As such, *any* claim grounded on the contract, not just some possible claims, necessarily fails.

relief." *Id*. (citation omitted). "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, [and] whether they form a convenient trial unit . . . ." *Id*. at 125 (citation and quotation marks omitted; alterations in original). See also *Washington*, 478 Mich at 420 (quoting *Adair*'s statement of the transactional test).

Plaintiff's claim here and Omar's claim in *Omar I* both arise from the same accident and the same insurance policy. Indeed, plaintiff's claim could have been resolved as part of *Omar I* because plaintiff's claim necessarily depended on showing that Omar was entitled to receive no-fault benefits. See *Adair*, 470 Mich at 124-125. The underlying issue raised by Omar and plaintiff in their respective suits was whether innocent third parties, whom they alleged to be Omar and plaintiff, could collect no-fault benefits from defendant despite rescission of Boyd's policy as void *ab initio*. *Omar I*, op at 1-2. Because the federal court addressed and answered this issue in *Omar I*, deciding Omar's claim was "substantively barred on the merits, any derivative claims," such as plaintiff's claims here, "necessarily fail as well." *Dawoud*, 317 Mich App at 524; *Omar I*, op at 1-2. Thus, plaintiff's claim for no-fault benefits was barred by res judicata.

We also note that plaintiff asserts that the federal court erred in finding that Omar was not an innocent-third party. Plaintiff's recourse, depending on the exact timing of the federal court's entry of judgment and the assignment, was either for Omar to appeal the summary judgment order, or for plaintiff, as assignee, to intervene and do so. But Omar did not appeal the federal court order, nor did plaintiff try to do so either, instead choosing to essentially use this lawsuit as a substitute for a federal appeal. That is precisely the type of litigation the res judicata doctrine is intended to bar. Plaintiff's position is that, because it did not like or agree with the outcome in federal court, it could simply pursue the same legal theories in the Michigan courts, with the prospect of a more congenial outcome from plaintiff's perspective. Had plaintiff appealed to a federal court of appeals, it may have obtained just such an outcome. Application of res judicata principles, however, bars us from awarding any such relief to plaintiff.

## III. CONCLUSION

For the reasons stated in this opinion, the trial court did not err by granting summary disposition to defendants based on the res judicata doctrine. Because plaintiff's claim was barred by res judicata, we need not decide whether a balancing of the equities regarding rescission was appropriate here, because the underlying contract was rescinded and thus legally never existed. Consequently, we do not address the rescission issue, nor do we balance the equities any further. Thus, the trial court's order granting summary disposition to defendant is affirmed. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Jonathan Tukel