*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NANCY GUCWA, Individually and as Guardian of
MARK MARUSZA,

       Plaintiff-Appellant,

v

ACCIDENT FUND INSURANCE COMPANY OF
AMERICA,

       Defendant-Appellee.

UNPUBLISHED
November 9, 2021

No. 355501
Wayne Circuit Court
LC No. 19-016743-NO

Before: STEPHENS, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Plaintiff, individually and as guardian of Mark Marusza, appeals as of right the trial court's order granting summary disposition in favor of defendant in this worker's compensation dispute. On appeal, plaintiff argues the trial court erred in dismissing plaintiff's claims for exemplary and punitive damages after defendant breached its contractual and statutory duty by refusing to pay worker's compensation benefits to Marusza. In addition, plaintiff argues the intentional infliction of emotional distress (IIED) claims were not barred by the statutes of limitations, and the trial court erred in concluding that the IIED claims were barred by res judicata and that plaintiff failed to establish the IIED claims. We disagree and affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

This case arises from a 2011 motor vehicle accident, in which a vehicle struck Marusza as he was crossing a street. At the time of the accident, Marusza was acting in the course and scope of his employment with Detroit Intermodel Transport, Inc., who had a worker's compensation insurance policy with defendant. *Marusza v Sanders*, unpublished per curiam opinion of the Court of Appeals, issued on May 14, 2020 (Docket Nos. 348269; 348355), p 1. As a result of the accident, Marusza suffered a traumatic brain injury (TBI) and injuries to his shoulders, cervical spine, and ribs. *Gucwa v Lawley*, 731 F Appx 408, 410 (CA 6, 2018). After his release from the hospital, Marusza's significant other, plaintiff, provided attendant care services for his injuries,

-1-

and Marusza expressly agreed to pay plaintiff for her care. *Id*. Since the accident, defendant paid some, but not all, of Marusza's medical expenses. The following is a description from the Sixth Circuit's opinion in a previous suit involving defendant and is used for background purposes:

> [Defendant] initially paid Marusza's claims for Gucwa's care but terminated payment in July 2012. [Defendant] retained the four defendant physicians—Dr. Jeffrey Lawley, Dr. Harvey Ager, Dr. W. John Baker, and Dr. Barry Rubin—[to conduct Independent Medical Evaluations (IMEs) and] to examine Marusza's disability. Following the doctors' reports, [defendant] refused to pay for certain treatments, including drugs to control injury-induced aggression, psychiatric hospitalization, pain medication, attendant care, physical therapy, doctors' visits, nurse case management, and surgeries for his neck, back, and shoulders. Marusza alleged that Medicare paid $15,665.00 of [his] treatment costs which [defendant] had refused to cover. [*Id*. at 410-411.]

As a result, plaintiff took a number of steps seeking payment for Marusza's medical expenses.

In 2015, plaintiff and Marusza sued defendant and the IME doctors in federal district court. *Gucwa v Lawley*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued January 23, 2017 (Case No. 15-10815). Plaintiff and Marusza alleged, in part, that defendant defrauded them in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 USC 1960 *et seq*., violated the Medicare Secondary Payer Act (MSPA), 42 USC 1395y *et seq*., and falsely imprisoned Marusza by requiring him to attend an IME with a neuropsychologist. *Id*. at 3. Meanwhile, plaintiff and Marusza submitted claims to the Worker's Compensation Board of Magistrates (WCBM). *Id*. at 1; *Marusza*, unpub op at 1. On May 23, 2016, the worker's compensation magistrate ordered defendant to pay worker's compensation benefits to Marusza, and any reasonable and necessary medical treatment for Marusza's work-related injury, finding Marusza sustained a mild TBI and other injuries from the motor vehicle accident that required ongoing medical treatment. *Gucwa*, unpub op at 1-2. After the WCBM's order, the federal district court dismissed plaintiff and Marusza's complaint, which the Sixth Circuit affirmed on appeal. *Gucwa*, unpub op at 8; *Gucwa*, 731 F Appx at 417-418. Specifically, the federal courts concluded plaintiff and Marusza's RICO claim failed because Marusza's personal injury, underlying his worker's compensation claim, did not "constitute an injury to business or property that is recoverable under RICO." *Gucwa*, 731 F Appx at 412.

In 2017, plaintiff and Marusza's coguardian, Jeffrey Fried, filed suit in the Wayne Circuit Court against defendant. *Fried v Sanders*, 783 F Appx 532, 534 (CA 6, 2019). Plaintiff and Fried alleged that Marusza suffered IIED, since 2012, because of defendant's refusal to, at times, pay for Gucwa's attendant care without medical evidence to the contrary, defendant's selection of IME doctors that it knew or hoped would produce dishonest reports, which would allow defendant to deny worker's compensation benefits to Marusza, and defendant's refusal to pay for Marusza's medical expenses. Plaintiff and Fried also alleged defendant violated MCL 500.2006 for a failure to timely pay the WCBM's award or Marusza's medical expenses and sought enforcement of the WCBM's order. *Fried*, 783 F Appx at 534. Plaintiff and Fried then filed an amended complaint, adding a RICO claim against defendant for "mail and wire fraud in a pattern of racketeering."

After plaintiff and Fried amended the complaint, defendant removed the case to federal district court, alleging federal-question jurisdiction. *Fried v Sanders*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued November 27, 2018 (Case No. 17-14006), p 1. After denying plaintiff and Fried's requests to amend the complaint to remove reference to federal law violations and to strengthen the IIED allegations, the federal district court dismissed the IIED claim and remanded the remaining claims to the trial court. *Id*. at 3-4. Relevant to this appeal, the federal district court stated:

> [The parties'] theory is that the conspiracy between [defendant] and the [IME doctors] created a RICO cause of action . . . and a criminal violation of federal mail and wire fraud statutes, both of which in turn constituted sufficiently outrageous conduct as to satisfy the first prong of an IIED. The RICO claim was foreclosed by [*Gucwa*], however, and though the use of mail and wire may elevate fraud to a federal crime, [the parties] articulate no reason why such a federal nexus should, by itself, elevate fraud from its own tort to an element of an IIED. . . . [E]ven if [the] claim were well-pled, it would be barred by claim preclusion because [p]laintiffs Gucwa and Marusza already had opportunity to litigate their denial of benefits up to the filing of their 71-page second amended complaint on April 22, 2016. . . . To the extent the tort is continuing, it is continuing as a dispute over what constitutes "reasonable and necessary treatment of [Marusza's] employment related injury," pursuant to the [WCBM's order]. [The] IIED claim is thus facially insufficient[.] [*Id*. at 2 (citation omitted).]

In dismissing the IIED claim, federal district court concluded it lost federal question subject-matter jurisdiction, and declined to assert supplemental jurisdiction over the worker's compensation enforcement claims. *Id*. at 3. The Sixth Circuit determined the federal district court lacked jurisdiction over each of the claims and remanded to the district court "with instructions to dismiss all claims without prejudice." *Fried*, 783 F Appx at 537. A written order, dismissing all claims in plaintiff and Fried's complaint was entered. *Fried v Sanders*, unpublished order of the United States District Court for the Eastern District of Michigan, entered September 11, 2019 (Case No. 17-14006).

In 2019, plaintiff filed the instant suit against defendant in the trial court, alleging Marusza suffered severe emotional distress because of defendant's intentional or reckless, continuous and cumulating, outrageous acts, which began in early 2012. Plaintiff alleged defendant committed mail and wire fraud in violation of 18 USC 1341 and 18 USC 1343 by using the mail or wires to further its scheme to dishonestly deprive Marusza of worker's compensation benefits and payment due under the Worker's Disability Compensation Act (WDCA) MCL 418.101 *et seq*. Plaintiff also alleged defendant's pattern of mail or wire fraud constituted racketeering in violation of RICO. Plaintiff asserted defendant failed to honestly, and in good faith, review plaintiff's claim as required by the WDCA and Michigan Uniform Trade Practices Act (MUTPA), MCL 500.2001 *et seq*. As a result, plaintiff requested exemplary damages for the loss of benefits, anguish, stress, humiliation, and anger inflicted by defendant and punitive damages for defendant's intentional, reckless, or grossly negligent breach of its statutory duties. In answer, defendant denied plaintiff's claims, arguing the claims were not pleaded in compliance with MCR 2.111(A)(1) and MCR 2.111(B)(1). Defendant asserted several affirmative defenses, including denial of breaching any

duties or intentionally inflicting emotional distress and that plaintiff's claims were barred by the statutes of limitations, under MCL 600.5805(10), and by res judicata or collateral estoppel.

Plaintiff filed a first amended complaint, alleging defendant breached its contractual duty to provide worker's compensation benefits and statutory duty, under the WDCA and MUTPA, to pay a worker's compensation claim in good faith. Plaintiff also alleged defendant breached its duty to not commit mail and wire fraud in a pattern of racketeering, under RICO. Plaintiff asserted defendant intentionally or recklessly inflicted severe emotional distress through its continuous and cumulating outrageous acts, which began in early 2012. As a result, plaintiff asserted entitlement to exemplary damages for the loss of benefits, anguish, stress, humiliation, and anger inflicted by defendant and punitive damages for defendant's intentional, reckless, or grossly negligent breach of its statutory duties. In answer, defendant denied plaintiff's claims, arguing the claims were not pleaded in compliance with MCR 2.111(A)(1) and MCR 2.111(B)(1). Defendant reasserted several affirmative defenses, including denial of breaching any duties or intentionally inflicting emotional distress and that plaintiff's claims were barred by the statutes of limitations, under MCL 600.5805(10), and by res judicata or collateral estoppel.

Defendant moved for summary disposition, under MCR 2.116(C)(7), MCR 2.116(C)(8), and MCR 2.116(C)(10). Defendant argued plaintiff's IIED claims are barred by the three-year statutes of limitations because of not being raised within three years of the first allegation of wrongdoing, in 2012. Defendant also argued plaintiff's IIED claims are barred by res judicata because those claims had not been raised in *Gucwa*, and clearly arose from the same transaction as the prior RICO claim. Even to the extent plaintiff's IIED claims are not barred by the statutes of limitations or res judicata, defendant argued plaintiff failed to establish outrageous conduct by defendant to support the IIED claims. As a result, defendant argued it was entitled to summary disposition on the entirety of the complaint or, at a minimum, on the claim for punitive damages.

In response, plaintiff argued exemplary damages were permitted because defendant violated the WCBM's order, requiring it to pay all reasonable and necessary medical expenses and attendant care. To the extent plaintiff established defendant recklessly, negligently, or maliciously violated the order, plaintiff argued entitlement to recover punitive damages. Plaintiff contended the Federal Rules of Civil Procedure (FRCP) did not require plaintiff and Marusza to raise the IIED claim in *Gucwa*, with the prior RICO claim. Even to the extent the IIED claims arose out of the same transaction, plaintiff argued the federal district court would not have exercised pendent jurisdiction over an IIED claim after dismissing the RICO claim. Plaintiff asserted res judicata did not apply to defendant's acts after filing suit in 2015, and that the statutes of limitations did not bar the IIED claims because the claims did not accrue until each instance of misconduct took place. As a result, because defendant's pattern of misconduct amounted to severe emotional distress, which defendant knew Marusza was peculiarly vulnerable to, plaintiff argued summary disposition was improper. In reply, defendant argued plaintiff's allegations did not amount to egregious conduct that was separate and distinct from the alleged failure to pay benefits. Defendant also argued plaintiff failed to provide authority for the position that the lack of compulsory joinder precluded application of res judicata in the state court. Rather, because federal courts employ the state law in which they sit for determining res judicata, defendant argued plaintiff's IIED claims are clearly barred. Defendant further argued the statutes of limitations barred any claims for IIED that occurred before 2015.

Without oral argument, the trial court granted defendant's motion for summary disposition, finding res judicata barred plaintiff's IIED claims, under MCR 2.116(C)(7), "for all acts occurring prior to" *Gucwa*, with the remainder of plaintiff's complaint failing "to state a claim upon which relief should be granted under MCR 2.116(C)(8) because [defendant's] conduct cannot be reasonably regarded as outrageous or egregious." Specific to res judicata, the trial court stated res judicata barred plaintiff's IIED claims because *Gucwa* involved the same parties, "the IIED claim could have been raised by Marusza as it arises under the same set of fact[s] as the RICO claim . . . and the [d]istrict [c]ourt could have exercised pendent jurisdiction on the claim," and there was a valid and final judgment in *Gucwa*. Specific to the IIED claims, the trial court stated defendant was "well within their rights, under MCL 418.38," to request Marusza submit to an IME, noting:

> [Defendant] only terminated [p]laintiff's benefits based on the opinions of multiple physicians who found that Marusza did not suffer from a TBI. Additionally, Dr. Paola Seidel, the physicians [sic] who concluded that Marusza did in fact suffer from a mild TBI, was recommended by [defendant]. It [was] counterintuitive that [defendant] would conspire against Marusza with the four prior IME doctors only to allow him to be examined by Dr. Paola Seidel who actually supported Marusza's position. Additionally, Marusza offer[ed] no evidence as to why these physicians would collude with [defendant] to deny Marusza's benefits. However, even if [defendant] had conspired with the IME doctors to terminate Marusza's benefits, . . . that still would not have given rise to an IIED claim.

The trial court also stated plaintiff could have sought relief from defendant's alleged violation of the WCBM's order for the alleged violation of the order. Because plaintiff could not meet the standard required for an IIED claim, the trial court stated plaintiff's IIED claims failed as a matter of law because defendant's denial of benefits, alone, was insufficient for an IIED claim. As a result, summary disposition was granted in its entirety and plaintiff's complaint was dismissed with prejudice.

## II. ANALYSIS

The trial court did not err in dismissing plaintiff's claim for exemplary and punitive damages for defendant's termination of worker's compensation benefits to Marusza. In addition, we conclude plaintiff's IIED claims are barred by res judicata, partially barred by the statutes of limitations, and, even to the extent plaintiff's claims are not barred, plaintiff failed to establish the IIED claims.

## A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 59; 919 NW2d 439 (2018). Under MCR 2.116(C)(7), "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of release . . . of the claim before commencement of the action." MCR 2.116(C)(7). When reviewing a motion for summary disposition under MCR 2.116(C)(7):

> [T]his Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any

-5-

affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010).]

Likewise, this Court reviews de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(8), which tests the legal sufficiency of a claim. *Eplee v Lansing*, 327 Mich App 635, 644; 935 NW2d 104 (2019). "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. *Id*. (quotation marks and citation omitted). When deciding a motion for summary disposition under MCR 2.116(C)(8), this Court only considers the pleadings. *Eplee*, 327 Mich App at 644. Summary disposition should be granted when "the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. at 644-645 (quotation marks and citation omitted).

In addition, this Court reviews de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a claim. *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 617-618; 873 NW2d 783 (2015). When deciding a motion for summary disposition under MCR 2.116(C)(10), this Court considers the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in a light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). Summary disposition should be granted when "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Moreover, this Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes. *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019). In interpreting a statute, the reviewing court's role is to determine the legislative intent that may reasonably be inferred from the express language of the statute. *Id*. If the statutory language is unambiguous, then the statute must be applied as written without judicial interpretation. *Id*. It is presumed "the Legislature intended the meaning it plainly expressed . . . ." *Cox v Hartman*, 322 Mich App 292, 298-299; 911 NW2d 219 (2017) (quotation marks and citation omitted). Similarly, this Court also reviews questions of contract interpretation de novo. *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004). Courts will enforce contracts in accordance with their terms, and give the words of the contract their plain and ordinary meanings. *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009). Likewise, a question of law, including whether issue preclusion bars a claim, is reviewed by this Court de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008); *Duncan v State*, 300 Mich App 176, 194; 832 NW2d 761 (2013).

## B.  BREACH OF WCBM ORDER

Plaintiff argues the trial court erred in dismissing the claim for exemplary and punitive damages for defendant's termination of worker's compensation benefits to Marusza.  We disagree.

MCL 418.863 states:

> Any party may present a certified copy of an order of a worker's compensation magistrate . . . in any compensation proceeding to the circuit court for the circuit in which the injury occurred, or to the circuit court for the county of Ingham if the injury was sustained outside this state.  The court, after 7 days' notice to the opposite party or parties, shall render judgment in accordance with the order unless proof of payment is made.  The judgment shall have the same effect as though rendered in an action tried and determined in the court and shall be entered and docketed with like effect.  [MCL 418.863.]

Accordingly, entry of a judgment is mandatory absent proof of payment.  *Cook v Hearthside, Inc*, 162 Mich App 236, 238; 412 NW2d 276 (1987).  However, the order must be a final order without a pending appeal with the appellate commission to be enforced in the circuit court.  *Id*. at 242.  This finality requirement is necessary to give due deference to the exclusivity of the WCBM's jurisdiction over compensation issues, remedies, and appeals.  *Id*. at 241-242.  An order that does not fix an amount of compensation to be awarded is not enforceable because "[i]t is not an award upon which a judgment could be entered in the circuit court."  *Thayer v Britz*, 234 Mich 645, 647; 209 NW 50 (1926).  Accordingly, "[a]ny dispute or controversy concerning compensation or other benefits shall be submitted to the bureau and all questions arising under this act shall be determined by the bureau or a worker's compensation magistrate, as applicable."  MCL 418.841(1).

A review of the WCBM's order indicates plaintiff received a favorable ruling for payment of worker's compensation benefits and medical expenses.  Specifically, the order stated "defendant shall pay [Marusza] workers' compensation benefits at the rate of $592.88 per week from October 19, 2011 until further order of the Bureau" and "pay for reasonable and necessary medical treatment of for [sic] plaintiff's employment related injury."  As this Court has previously recognized, the parties do not dispute the "WCBM opinion and order is a final order."  *Marusza*, unpub op at 3.  Instead, the parties disagree as to whether defendant's termination of benefits was a violation of the WCBM's order and entitlement to exemplary and punitive damages.  While the award of worker's compensation benefits was a fixed amount of $592.88, a fixed amount of compensation for reasonable and necessary medical expenses was not established.  As a result, the trial court only has authority to enter a judgment from the WCBM's order for worker's compensation benefits.  *Britz*, 234 Mich at 647.  To the extent plaintiff seeks to enforce the order for medical expenses, such authority is vested exclusively with the WCBM.  *Maglaughlin v Liberty Mut Ins Co*, 82 Mich App 708, 710-711; 267 NW2d 160 (1978).

Regardless whether this Court has jurisdiction to enforce the WCBM's order, there is no entitlement to exemplary or punitive damages for defendant's post-WCBM order termination of benefits under the worker's compensation insurance policy.  "Generally, the damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made."  *Van Marter v American Fidelity*

*Fire Ins Co*, 114 Mich App 171, 182; 318 NW2d 679 (1982). However, insurance contracts for disability income protection "are commercial in nature" to pay a sum of money when a specified event occurs. *Id*. at 183 (quotation marks and citation omitted). "The damage suffered upon the breach of the agreement is capable of adequate compensation by reference to the terms of the contract." *Id*. (quotation marks and citation omitted). While a breach of the insurance contract still results in some annoyance and vexation, "recovery for those consequences is generally not allowed, absent evidence that they were within the contemplation of the parties at the time the contract was made." *Id*. (citation omitted). Accordingly, a plaintiff cannot seek exemplary damages because "exemplary damages are not recoverable for breach of a commercial contract absent proof of tortious conduct existing independent of the breach." *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 601-602, 374 NW2d 905 (1985) (quotation marks and citation omitted). Moreover, "[p]unitive damages, which are designed to punish a party for misconduct, are generally not recoverable in Michigan" unless "expressly authorized by statute." *Casey v Auto Owners Ins Co*, 273 Mich App 388, 400; 729 NW2d 277 (2006).

Because the worker's compensation insurance policy calls for the payment of money on the occurrence of a specific event, it is not a personal contract but a commercial contract for which damages for emotional or mental distress are not recoverable. *Van Marter*, 114 Mich App at 182. As a result, plaintiff's remedy for defendant's alleged bad faith refusal to pay worker's compensation benefits is limited to recovery of actual attorney fees. *Id*. Plaintiff argues defendant's tortious conduct, causing Marusza severe emotional distress, existed independent of the breach, allowing exemplary and punitive damages. However, the record indicates plaintiff's IIED claims relate solely to defendant's alleged failure to pay worker's compensation benefits in accordance with the worker's compensation insurance policy. Therefore, even assuming plaintiff's complaint would otherwise establish an IIED claim exists, it does not state a claim upon which relief can be granted. *Kewin v Massachusetts Mut Life Ins Co*, 409 Mich 401, 420-421; 295 NW2d 50 (1980). As a result, there is no entitlement to exemplary damages on the bad-faith claim. Further, because plaintiff failed to establish statutory authority that would permit punitive damages, there is no entitlement to such damages. *Casey*, 273 Mich App at 400.

## C. RES JUDICATA

Plaintiff argues the trial court erred in finding the federal courts' orders, in *Gucwa*, barred plaintiff's IIED claims in the trial court under res judicata. We disagree.

Res judicata prevents relitigation of a claim premised on the same underlying transaction or events as a prior suit. *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004). A subsequent action is barred by res judicata when: "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id*. For res judicata to apply, the first action must have resulted in a final decision. *Richards v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2006). This Court has consistently recognized the broad approach taken to res judicata, "holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Lichon v Morse*, 327 Mich App 375, 398; 933 NW2d 506 (2019), citing *Adair*, 470 Mich at 121. Moreover, "res judicata will apply to bar a subsequent relitigation based upon the same transaction or events, regardless of

whether a subsequent litigation is pursued in a federal or state forum." *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 380; 596 NW2d 153 (1999). As a result, "if a plaintiff has litigated a claim in federal court, the federal judgment precludes relitigation of the same claim in state court based on issues that were or could have been raised in the federal action, including any theories of liability based on state law." *Id*. (citation omitted). In determining the preclusive effect of a prior federal judgment, "[t]he state courts must apply federal claim-preclusion law[.]" *Id*. at 380-381 (citation omitted). Michigan courts use "a transactional test to determine if the matter could have been resolved in the first case." *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 420; 733 NW2d 755 (2007). "Whether a factual grouping constitutes a 'transaction' for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin, or motivation, [and] whether they form a convenient trial unit[.]" *Adair*, 470 Mich at 125 (citation and emphasis omitted). However, "when the federal claim in a federal action is dismissed before trial and it is clear that the federal court would have declined to exercise jurisdiction over a related state claim that could have been raised in the federal action through pendent jurisdiction, a subsequent action in state court on the state claim that would have been dismissed without prejudice in the prior federal action is not barred by the doctrine of res judicata." *Bergeron v Busch*, 228 Mich App 618, 627; 579 NW2d 124 (1998).

To start, it is undisputed that *Gucwa*, *Fried*, and the instant suit all involve Marusza, plaintiff, and defendant. Additionally, the RICO claim, in *Gucwa*, was dismissed with prejudice for a failure "to allege injury to business or property," which the Sixth Circuit affirmed *Gucwa*, unpub op at 3-5; *Gucwa*, 731 F Appx at 417-418. Accordingly, the federal court's order constituted a final and valid judgment. Instead, plaintiff contends the IIED claims are not barred by res judicata because of not arising from the same transaction or occurrence as the RICO claim in *Gucwa*.

The trial court found plaintiff's IIED claims arose from the same set of facts as the prior RICO claim and, therefore, should have been raised in *Gucwa*. A review of the record indicates the RICO claim, from *Gucwa,* and the IIED claims, from the instant suit, are remarkably similar. Specifically, both claims allege defendant terminated Marusza's worker's compensation benefits on the basis of dishonest or falsified IMEs, which defendant knew about or conspired to create to deny benefits. Additionally, both claims allege defendant's misconduct was continuous since 2012. While plaintiff's IIED claims request damages for severe emotional distress, it appears plaintiff is seeking the worker's compensation benefits believed to be owed. Further, plaintiff's IIED claims contain an allegation that defendant breached its statutory duty under RICO. Because the IIED claims and the RICO claim relate to the same alleged misconduct during the same timeframe, with a request for the same damages, the trial court did not err in finding the IIED claims were barred by res judicata. *Adair*, 470 Mich at 125.

## D. STATUTES OF LIMITATIONS

To the extent plaintiff's claim is not barred by res judicata, plaintiff argues the IIED claims are not barred by the statute of limitations. We disagree.

Under MCL 600.5805, the applicable statute of limitations for an IIED claim is three years:

(1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

(2) Except as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person or for injury to a person or property. [MCL 600.5805(1) and (2).]

A claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827.

Plaintiff argues the continuing nature of defendant's misconduct falls within the continuing violations exception to the three-year statute of limitations period. However, the continuing violations doctrine has historically been narrowly applied to trespass, nuisance, and civil-rights cases. *Horvath v Delida*, 213 Mich App 620, 627; 540 NW2d 760 (1995); *Meek v Mich Bell Telephone Co*, 193 Mich App 340, 344; 483 NW2d 407 (1991). Regardless of whether any support exists to extend application of the doctrine to IIED, the exception has since been overruled by our Supreme Court. In *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263; 696 NW2d 646 (2005), our Supreme Court stated:

[MCL 500.5805] requires a plaintiff to commence an action within three years of each adverse employment act by a defendant. Section 5805 does not say that a claim outside this three-year period can be revived if it is somehow "sufficiently related" to injuries occurring within the limitations period. Rather, the statute simply states that a plaintiff "shall not" bring a claim for injuries outside the limitations period. Nothing in these provisions permits a plaintiff to recover for injuries outside the limitations period when they are susceptible to being characterized as "continuing violations." To allow recovery for such claims is simply to extend the limitations period beyond that which was expressly established by the Legislature. [*Id*. at 282.]

On this basis, plaintiff was required to raise the IIED claims within three years of each instance of alleged misconduct that caused severe emotional distress. A review of the record indicates that plaintiff's allegations span from 2012 to present day. Because the original complaint was filed in December 2019, evidence of defendant's alleged misconduct occurring before December 2016, is untimely and cannot be maintained. As a result, the merit of plaintiff's IIED claims will be considered from defendant's alleged misconduct occurring after December 2016.

E. IIED CLAIMS

To the extent plaintiff's claims are not barred by res judicata, plaintiff argues the trial court erred in concluding none of defendant's conduct amounted to extreme and outrageous conduct to establish IIED. We disagree.

"To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's

intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Lucas v Awaad*, 299 Mich App 345, 359; 830 NW2d 141 (2013) (quotation marks and citation omitted). The threshold for showing extreme and outrageous conduct is high. *Roberts*, 422 Mich at 603. "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. (quotation marks and citation omitted). "Accordingly, liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*. (quotation marks, citation, and alteration omitted). Instead, recovery is generally limited to situations "in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Doe v Mills*, 212 Mich App 73, 91; 536 NW2d 824 (1995) (citation omitted).

Taken in the light most favorable to plaintiff as the nonmoving party, the trial court did not err in granting summary disposition of plaintiff's IIED claims. The record establishes that plaintiff has essentially alleged defendant wrongfully terminated worker's compensation benefits in three separate suits. In this third and instant proceeding, the trial court determined defendant's termination of worker's compensation benefits was grounded on the findings in multiple IMEs, which was within defendant's rights, having determined Marusza did not suffer from a TBI. The trial court found no evidence of a conspiracy between defendant and the IME doctors to deny Marusza's benefits and, instead, concluded plaintiff had an adequate remedy through the WCBM for the alleged violation of the WCBM's order.

Plaintiff contends defendant's pattern of misconduct was extreme and outrageous because it knew of Marusza's peculiar susceptibility to emotional distress when it terminated benefits and abused the great power it had over Marusza's health and finances. IIED is an intentional tort and requires proof that defendant possessed "a specific intent . . . to inflict the alleged injury of emotional distress on plaintiffs." *Graham v Ford*, 237 Mich App 670, 673-674; 604 NW2d 713 (1999). An insurer's mere failure to pay or termination of benefits, by itself, is not sufficiently outrageous to support a claim for IIED. *Roberts*, 422 Mich at 605; see also *Butt v DAIIE*, 129 Mich App 211, 219; 341 NW2d 474 (1983) (finding a defendant is not liable for IIED where defendant has done no more than insist upon their legal rights in a permissible way, even though defendant is aware that such insistence is certain to cause emotional distress). Defendant, in accordance with MCL 418.385, requested that Marusza complete multiple IMEs, between the date of the injury and 2019, in providing worker's compensation benefits. Specifically, MCL 418.385 states:

> After the employee has given notice of injury and from time to time thereafter during the continuance of his or her disability, if so requested by the employer or the carrier, he or she shall submit himself or herself to an examination by a physician or surgeon authorized to practice medicine under the laws of the state, furnished and paid for by the employer or the carrier. . . . If he or she refuses to submit himself or herself for the examination, or in any way obstructs the same, his or her right to compensation shall be suspended and his or her compensation during the period of suspension may be forfeited. [MCL 418.385.]

We acknowledge that the statute is very specific regarding the licensure of health care professionals to whom a statutorily authorized request can be made. From our review of the record below, one of the health care providers for whom an IME request was made, Dr. Baker, was a neuropsychologist, not a licensed M.D. However, it was well within defendant's right to request Marusza to submit to the other IMEs.[1] Contrary to plaintiff's allegation that defendant's selection of the IME doctors was evidence of a conspiracy, MCL 418.385 required defendant to "furnish and [pay] for" the IMEs. *Id*. Notably, if plaintiff believed defendant and the IME doctors were deliberately falsifying the IME reports to deny benefits, plaintiff had the right to select a physician to be present during the IMEs; however, plaintiff apparently did not exercise this right. *Id*.

Additionally, plaintiff maintains defendant's knowledge of Marusza's peculiar susceptibility to emotional distress because of his TBI, including suicidal and homicidal ideations and severe depression, transforms defendant's termination of benefits to extreme and outrageous conduct. This Court has recognized that an IIED claim may occur when defendant abuses a relationship in which it is "in a position of actual or apparent authority over plaintiff or gives defendant power to affect plaintiff's interests" or "where defendant acts notwithstanding the knowledge that plaintiff is peculiarly susceptible to emotional distress because of defendant's actions[.]" *Lisecki v Taco Bell Restaurants, Inc*, 150 Mich App 749, 753; 389 NW2d 173 (1986) (quotation marks and citation omitted). However, defendant is not liable in these situations "where [it] has done no more than insist upon [its] legal rights in a permissible way even though [it] is well aware that such insistence is certain to cause emotional distress." *Id*. (quotation marks and citation omitted). On this basis, because defendant's request to Marusza to submit to IMEs was within defendant's legal right, plaintiff cannot establish defendant specifically intended to cause severe emotional distress where defendant terminated worker's compensation benefits related to a TBI injury after multiple IMEs indicated Marusza did not suffer a TBI. Accordingly, defendant's reliance on the IMEs, without any evidence establishing the IMEs were unreliable, did not amount to extreme and outrageous conduct.

Moreover, the three-year statute of limitations for IIED claims bars any instance of defendant's alleged pattern of misconduct that occurred before December 2016. However, regardless of the statutes of limitations, we do not find a pattern of misconduct exists that constituted extreme and outrageous conduct. As stated, defendant's request that Marusza submit to multiple IMEs while receiving worker's compensation benefits was within defendant's legal rights. Additionally, plaintiff relies on the worker's compensation magistrate's ex parte meeting, in early 2016, with defendant as evidence of misconduct, in which the magistrate allegedly conveyed "secret knowledge" that defendant used to plaintiff's detriment. Specifically, plaintiff alleges the magistrate told defendant not to trust plaintiff's attorney or tell plaintiff's attorney about the meeting. While defendant's participation and delay in informing plaintiff about the ex parte meeting may have been inconsiderate, there is no evidence that suggests the magistrate's comments amounted to anything more than insults, indignities, threats, annoyances, or petty oppressions and are insufficient as a matter of law to be considered extreme and outrageous conduct. *Graham v Ford*, 237 Mich App at 675. Further, while the trial court may enter an order

---

[1] He was asked to submit to an IME before a neuropsychologist, which by statute, was not authorized. This practice doesn't show bad faith on the part of the defendant.

to enforce the WCBM's order to pay the awarded worker's compensation benefits, defendant's mere failure to pay insurance benefits does not rise to the level of extreme and outrageous conduct for IIED purposes. *Roberts*, 422 Mich at 605. Accordingly, there is insufficient evidence that demonstrates a pattern of misconduct by defendant that constituted extreme and outrageous conduct.

Further, plaintiff contends there was no adequate remedy through the WCBM because defendant would continue to violate the order. However, plaintiff has an adequate remedy available in the form of an appeal to the WCAC. *Barham v WCAB*, 184 Mich App 121, 131; 457 NW2d 349 (1990). "Plaintiff should not be considered to be any different from other claimants who contend that they have been wrongly denied benefits and must go without benefits until their appeal has run its course." *Id*. We note plaintiff is actually in a better position than many other claimants because Marusza did receive worker's compensation benefits for a significant period of time. Moreover, plaintiff's argument that an appeal to the WCAC is not an adequate remedy because defendant will continue to violate any resulting order is merely speculative. Rather, defendant's prior payment of benefits indicates defendant's willingness to comply with its worker's compensation obligations where plaintiff and Marusza qualify for such benefits. Therefore, because plaintiff failed to establish extreme and outrageous conduct by defendant in the termination of worker's compensation benefits, the trial court properly dismissed the IIED claims.

## III. CONCLUSION

Affirmed. Defendant may tax costs.

/s/ Cynthia Diane Stephens
/s/ David H. Sawyer
/s/ Deborah A. Servitto

-13-